IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

**JAMIEN PALMER,** for himself
and all others similarly situated,
3206 Mondawmin Avenue
Baltimore, Maryland 21216,

      *Plaintiffs*,

      **vs.**

**STATE OF MARYLAND**
SERVE: Dereck E. Davis, Treasurer
State of Maryland Treasurer's Office
80 Calvert Street
Goldstein Treasury Building
Annapolis, Maryland 21401

and

**DEPARTMENT OF PUBLIC SAFETY &
CORRECTIONAL SERVICES**
SERVE: Robert L. Green, Secretary
300 East Joppa Road, Suite 1000
Towson, Maryland 21286

and

**DIVISION OF PRETRIAL DETENTION
& SERVICES**
SERVE: Michael R. Resnick, Esquire
Commissioner of Pretrial Detention & Services
400 E. Madison Street
Baltimore, MD 21202

and

**Frederick T. Abello, Warden**
Baltimore Central Booking & Intake Center
300 E. Madison Street
Baltimore, Maryland 21202,

      *Defendants*.

**Jury Trial Demanded**

Civil Case No. _____



**Exhibit 1**

## COMPLAINT WITH CLASS CLAIMS

COMES NOW Plaintiff, Jamien Palmer, for himself, all others similarly situated, and such classes and subclasses as may hereinafter be certified, by and through counsel, Cary J. Hansel, and the law firm of Hansel Law, P.C., and sues the Defendants listed above, stating as follows:

### INTRODUCTION

1.      This cases arises from the long standing practice at the Baltimore Central Booking & Intake Center ("Central Booking") of holding people who have been arrested by the police for an unconstitutionally long period of time after the Court has ordered their release.

2.      People presumed innocent and ordered released are held, on average, more than 14 hours after their release is ordered. Seventeen percent of people are held more than 20 hours after a judge signed an order for their release. Almost 10% of people are held more than 24 hours after their release has been ordered. Approximately 3% of people are held for more than 36 hours and *up to 5 days* after a judge grants their freedom.

3.      People whose charges have been entered *nolle prosequi* and who have no more pending charges are held an average of more than 24.98 hours at Central Booking after a judge orders their release.

4.      In a random sample of 100 arrests from 2019, the total hours of overincarceration endured by the victims was 1,483.08 (2 months of freedom).

5.      The statistics above are derived from 2019, which is prior to the pandemic. During the pandemic, the risk of incarceration increased exponentially as Covid-19 tore through detention settings. Despite calls to release persons faster, including from Maryland's Attorney General, overincarceration times only increased.

1

6.      In 2020, the average length of overincarceration at Central Booking approximately doubled.  Examples include that, in December of 2020, a man was held in Central Booking for 8 days after the court ordered his release.  In October of 2020, a man was held for 6 days after a judge ordered him freed.

7.      In 2021, the average length of overincarceration at Central Booking remained well above the historical 2019 averages.

8.      Upon information and belief, people have been held by the State at Central Booking for unconstitutionally lengthy periods of time after a court orders their release since prior to 2017 through and including the filing of this Complaint.

9.      Both prior to and during the pandemic, the State of Maryland unconstitutionally kept people incarcerated for unreasonable periods of time at Central Booking after they were ordered released by the Court.

10.      Documents the State was forced to produce under the Public Information Act by order of this Court demonstrate that the entire process of clearing an arrestee for release can be completed in just 15 minutes.  This is not surprising because the process is essentially the same one used by police officers when drivers are stopped at the roadside: an identification check and a computer check for warrants or detainers.

11.      The State needs no time to transport arrestees before release from Central Booking because their bail review hearings are conducted via video such that the arrestee never leaves Central Booking.

12.      The State needs no time to gather or return detainee property before detainees are released because the policy at Central Booking is that property is picked up after release at 301

2

East Eager Street (24/7 - 365 days a year) for property held up to three days, or at the Jail Industries Building, 531 East Madison Street, for property held longer.

13.     The State only needs 15 minutes to process someone out of Central Booking.

14.     Central Booking is located in Baltimore City, where public transportation is available around the clock. Most, if not all, people living in Baltimore can walk home from Central Booking. People need not be held for the purposes of waiting until they are able to leave the premises and doing so against their will would be unconstitutional in any event.

15.     Even allowing the State 2 hours to complete its 15 minute processing of releasees, the amount of additional time the State holds people in Central Booking on an annual basis averages a total of over 8 years of freedom.

16.     *Every year, people in Baltimore are robbed of 8 years of freedom by the State.*

17.     This stolen freedom costs people not just time, but money, jobs, their apartments, property like cars repossessed, and even custody of their children.

18.     When the State unconstitutionally and tortiously violates the rights of people by keeping them incarcerated after they have been ordered released, the State puts their health, physical safety and even lives at risk.

19.     The State's failure to release citizens entitled to their freedom is compounded by the State's failure to maintain a safe custodial environment at Central Booking.

20.     On average, there are almost 2 serious reported incidents of detainee on detainee violence *every day* in Central Booking. This figure does not include less serious or unreported incidents. This figure also does not include the risk of assault by the guards at Central Booking.

21.     Less than a year prior to the filing of this Complaint, at least three guards at Central Booking were criminally indicted for assaulting inmates.

3

22.     Central booking is a violent and dangerous place where every additional moment places a person at greater risk of physical harm and death.

23.     Incarcerating people in Central Booking for any period of time beyond the minimum required by law is unreasonable, unconstitutional and dangerous. It also wastes the taxpayer's money.

24.     Officials at Central Booking unconstitutionally favor those who can afford to purchase their freedom with bail bonds. People who pay a bond spend, on average, just 11.1 hours in central booking after they are ordered released. As noted above, when the State drops the charges, people languish in custody for an average of over 24 hours beyond the time when they were ordered free. This means that people who pay, but still have pending charges, are preferentially released *more than twice as fast* as those whose charges the State has decided not to pursue.

25.     Police and the justice system disproportionately arrest and detainee Black people. A collection of over 100 studies proving these and related disparate impacts are collected here: https://www.washingtonpost.com/graphics/2020/opinions/systemic-racism-police-evidence-criminal-justice-system/. There is no longer any doubt among scholars on these points.

26.     Black people are disproportionately the victims of overdetention in Central Booking. Baltimore is approximately 63% African American, but African Americans represent approximately 95% of those overdetained after a judge orders their release at Central Booking.

27.     Overdetention at Central Booking in an implicitly and explicitly racist policy.

28.     Jamien Palmer, whose story is told below, is one of the innocent Black victims of the State's careless pattern and practice of overdetention at Central Booking. He is also a father, a husband, and an information technology professional with a bachelor's degree. He had no

4

criminal record other than the false charges which caused him to be arrested in Baltimore and taken to Central Booking, where, even though the charges were dropped, he was overdetained for almost 22 hours after the court ordered his release.

## JURISDICTION AND VENUE

29.     This Court has jurisdiction pursuant to Md. Code, Cts. & Jud. Proc. §§ 6-102 and 6-103.

30.     Venue is proper pursuant to Md. Code, Cts. & Jud. Proc. § 6-201.

31.     Plaintiff timely submitted notice of his claim and the claims of those similarly situated under the Maryland Public Information Act, which was timely received by the State on December 20, 2019.

## PARTIES

32.     Plaintiff Jamien Palmer is, and was at all times relevant to this Complaint, an adult resident of Baltimore, Maryland residing at the address in the caption.

33.     Defendant State of Maryland is a *sui juris* political division.

34.     Defendant Department of Public Safety and Correctional Services is a *sui juris* state agency created and operating under the laws of the State of Maryland, with an office located at 300 East Joppa Road, Towson, Maryland 21286.

35.     Defendant Division of Pretrial Detention & Services is a *sui juris* division of the Department of Public Safety and Correctional Services, Department of Public Safety and Correctional Services, with an officer located at 400 E. Madison Street, Baltimore, MD 21202.

36.     Frederick T. Abello is, and at all relevant times was, the Warden at the Baltimore Central Booking & Intake Center, with an address of 300 E. Madison Street, Baltimore, Maryland 21202. Warden Abello is sued in his personal and official capacities. Warden Abello

has direct supervisory control and final decision making authority at Central Booking over the processing and release of arrestees who have been released from commitment by a judge.

## ADDITIONAL FACTS COMMON TO ALL COUNTS

37.     On or about March 14, 2019, at approximately 7:30 a.m., Plaintiff was driving into Baltimore with his two children and his girlfriend's son in the car when he was pulled over by transit police. He was informed that there was a warrant out for his arrest and was handcuffed.

38.     The officer called for backup and searched Plaintiff's vehicle. After the search, the officer placed Plaintiff in his police car. The officer told Plaintiff that he was "lucky" the officer "saw those kids' heads pop up because these charges make you seem like a violent person," and if his kids had not been present "[y]ou probably would have been roughed up."

39.     Plaintiff was transported to Central Booking under the care and control of the State of Maryland, the Department of public Safety and Correctional Services, the Division of Pretrial and Detention Services, and Warden Abello.

40.     Central Booking opened in July 1995 in Baltimore. All adults arrested in Baltimore are processed (booked) there.

41.     The booking process begins with a bar-coded bracelet assigned to the detainee for tracking purposes. Then, the detainee's personal, descriptive and demographic information is entered into the System. Biometric identification is done by laser-scan digitized fingerprinting and digitized video photos, which can be transmitted electronically for what the State calls "quick comparison" on the State's website for Central Booking. *See* https://msa.maryland.gov/msa/mdmanual/22dpscs/html/22agen.html#central. This eliminates the need to spend any significant amount of time identifying an arrestee after they are ordered released.

2022 MAR 22  AM 10:36
STATE TREASURER'S OFFICE

42.     As the booking process continues, the arresting officer enters data into a computer system about the arrest and charges. This report goes to an on-site District Court Commissioner who conducts an initial hearing to determine probable cause, set bail, and assign a trial date. After identification, the detainee is interviewed by a pretrial investigator. Booking then is completed. The State claims, on its Central Booking website, that, "With new technology, the process is expected to take under four hours." *Id*.

43.     After booking, the detainee either is released on recognizance, posts bail, or is assigned to the Center.

44.     State employees at Central Booking, including the Warden, have access there to a statewide criminal justice information network, the Automated Booking System is used by the Center. This system makes it possible to eliminate any significant wait associated with identifying an arrestee upon judicial discharge. According to the website maintained about the Central Booking facility by the State of Maryland, **"the System quickly identifies a detainee, and any previous criminal history or outstanding arrest warrants."** *See* https://msa.maryland.gov/msa/mdmanual/22dpscs/html/22agen.html#central.

45.     Approximately twelve hours after Plaintiff arrived at Central Booking, he was advised of his rights before a Commissioner. Several hours later, approximately between 10:00 p.m. and midnight, he went before a second Commissioner and his bail was set at no bail. The next day, he went before a District Court Judge.

46.     On March 15, 2019 at 3:33 pm, the District Court for Baltimore City ordered Jamien Palmer released on his own recognizance.

47.    Despite a judge ordering Plaintiff's release, he was returned to a holding cell at Central Booking, where he waited for his release. Within four hours, the other four individuals Plaintiff was held with had been moved and Plaintiff alone waited for his release.

48.    Throughout the night and into the next day, each time the shift changed, Plaintiff attempted to bring the correctional officers' attention to his release papers. Each time, the correctional officers told him that he was supposed to have been released on the last shift, and to "hold tight."

49.    Jamien Palmer was not released from Central Booking until March 16, 2019 at approximately 1:30 pm.

50.    Jamien Palmer was detained for 21.95 hours (21 hours and 57 minutes) after the court ordered his release.

51.    Even allowing a reasonable period of time for processing, Jamien Palmer was unconstitutionally overdetained by the Defendants.

52.    Even allowing a reasonable period of time for processing, Jamien Palmer was falsely imprisoned by the Defendants.

53.    All charges against Jamien Palmer terminated in his favor.  He was cleared of all wrongdoing.  The charges were almost immediately identified by authorities as false and coming from a mentally ill individual.

## CLASS ACTION ALLEGATIONS

54.    As to each count below, the plaintiff brings the claim in his own right, but also as a class action, pursuant to Maryland Rule 2-231 and/or Fed. R. Civ. P.23, on behalf of all of those similarly situated.

8

55.     The Plaintiff will seek the certification of at least two classes, both of which he adequately and fairly represents.

56.     The "Constitutional Class" consists of arrestees *unconstitutionally* overdetained at Central Booking after the court orders release.

57.     The "Tort Class" consists of arrestees *tortiously* overdetained at Central Booking after the court orders release.

58.     Including data from the last three years prior to filing this Complaint, the classes each consist of approximately 20,000 people.

59.     Each class is so numerous that joinder of all members is impracticable.

60.     There are common questions of law and fact that affect the rights of every member of each respective class, and the types of relief sought are common to every member of each respective class. The same conduct by the Defendants has injured every member of each respective class in the same way.

61.     The Constitutional Class is predominated by questions of law or fact common to the claims of all members. These include, but are not limited to:

a.      given the specific shared conditions at Central Booking and the demonstrated ability to process inmates out in as little as 15 minutes, what is the constitutional standard for releasing arrestees?

b.      how quickly can arrestees reasonably be freed from Central Booking once a court orders their release?

62.     The Tort Class is predominated by questions of law or fact common to the claims of all members. These include, but are not limited to:

a.   once any probable cause to arrest and detain was terminated by a Court's release

order, how quickly must an arrestee be released from custody given the specific

conditions at Central Booking?

b.   what value should be placed on each hour of overdetention and what injunctive

relief is appropriate?

63.   The claims of Jamien Palmer are typical of the claims of the class. In fact, his

claims are indistinguishable from those of every other class member. The claim of each and all

is that they were overdetained at Central Booking for an unreasonable, unconstitutional and

tortious period of time after a judge ordered their release.

64.   Jamien Palmer will adequately represent the claims of the class. Mr. Palmer, and

the law firm representing him here, have spent two years investigating the issues and obtaining

the data necessary to file this case. This included filing Public Information Act requests and

successfully suing the State to force the production of withheld documents which form the basis

of the allegations herein. The relevant documents were ordered produced in the matter of

*Palmer v. Dept. of Public Safety and Correctional Services*, Circuit Court for Baltimore City,

Maryland, Case No: 24C20003017. In her ruling ordering these materials produced, a Baltimore

City Circuit Court Judge held that the request for the documents necessary for this lawsuit:

> seeks information pertaining to the twin core constitutional rights of liberty and
> due process of thousands of Maryland citizens, many (if not most) of whom lack
> the resources and wherewithal to do what Plaintiff and his counsel intend to
> pursue. Specifically, Plaintiff intends to bring light to what he contends is a
> systemic failure to process and release incarcerated or confined individuals within
> a constitutionally permissive period of time following issuance of an RFCO; and
> that during the period of the State's unconstitutional confinement of these
> individuals, their physical safety is at risk due to the prevalence of violent assaults
> in detention settings. The court finds the benefit to the public to be derived from
> the instant action is arguably the most primal of all: to guard and protect the right
> to live free from unlawful government action.

*See Palmer v. Dept. of Public Safety and Correctional Services*, Circuit Court for Baltimore City,

Maryland, Case No: 24C20003017; Court Order of 10/14/21. Acquiring the documents

necessary to prepare this lawsuit required not only requests and a lawsuit, but a trial on the merits

of the Public Information Act claims. In successfully pursuing all of this, Jamien Palmer has

proven that he will fairly and adequately protect the interests of the class.

65.     The prosecution of separate actions by individual members of the class would

create a risk of inconsistent or varying adjudications with respect to individual members of the

class that would establish incompatible standards of conduct for the party opposing the class.

The primary issue in this case will be the establishment of a constitutional standard for the

release of arrestees from Central Booking given the unique circumstances at the facility. There

is a high degree of risk that inconsistent standards would be adopted if these claims are not tried

together as a class action.

66.     For the same reasons, the prosecution of separate actions by individual members

of the class would create a risk of adjudications with respect to individual members of the class

that would as a practical matter be dispositive of the interests of the other members not parties to

the adjudications or substantially impair or impede their ability to protect their interests.

67.     The State has refused to act on grounds generally applicable to the class, thereby

making appropriate final injunctive relief or corresponding declaratory relief with respect to the

class as a whole. Specifically, the State has refused to timely release each class member from

Central Booking after the release is ordered by the Court.

68.     For all of the reasons above, questions of law or fact common to the members of

the class predominate over any questions affecting only individual members and a class action is

superior to other available methods for the fair and efficient adjudication of the controversy.

11

69.     The members of the class have little interest in individually controlling the prosecution of separate actions.  This is so for two reasons.  First, each class member has the same interest in injunctive relief reducing the period of permissible overdetention to the minimum.  Second, the value of the claim of each class member is likely in a range such that individual cases may not be feasible to bring at all.

70.     Absent a class action, most members of the classes likely would find the cost of litigating their claims to be prohibitive, and will have no effective remedy at law.  The class treatment of common question of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

71.     The only litigation concerning the controversy already commenced by members of the class is the groundwork done in the Public Information Act lawsuit by the plaintiff here.  As the Circuit Court noted in that case, it was pursued for the specific purpose of obtaining the data necessary to bring this claim.

72.     Concentrating the litigation of the claims in this Court is desirable because the claims involve arrests and detentions in Baltimore, where this Court sits.

73.     No difficulties are likely to be encountered in the management of the proposed class action, and any imagined difficulties would be far outweighed by the benefits of class certification.

74.     To the extend revealed by discovery and investigation, there may be additional appropriate classes and/or subclasses from the above class definitions which are broader and/or narrower in time or scope of exposure.

75.     Excluded from the classes are Defendants' officers, agents or employees and members of their immediate families; and the judicial officers to whom this case is assigned, their staff and the members of their immediate families.

76.     Excluded from the classes are any local, state, or federal government entities.

77.     The Plaintiff and those similarly situated have suffered, and will continue to suffer, harm and damages as a result of Defendants' unlawful and wrongful conduct.

78.     Class certification is also proper for reasons of judicial economy.  Many, if not all, of the class members would have to be called as witnesses in any individually litigated case as their testimony will provide evidence of notice, pattern and practice.  As such, each Plaintiff would be required to testify numerous times, as would the Defendants and independent witnesses in each respective case.  Litigating these cases individually would be a significant waste of resources for this Court, these Plaintiffs and the Defendants.

79.     No unusual difficulties are likely to be encountered in the management of this action as a class action.

### CLAIMS FOR RELIEF

### COUNT I – UNCONSTITUTIONAL OVERDETENTION UNDER 42 USC § 1983

80.     All paragraphs elsewhere in this Complaint are incorporated herein by reference.

81.     Count I is a claim against all Defendants for unconstitutional overdetention under 42 USC § 1983.  The Plaintiff, for himself and all those similarly situated, pleads this claim alternatively under the 4th, 8th and 14th (due process and equal protection) Amendments to the United States Constitution.

82.     The Plaintiff, and those similarly situated, were wrongly detained by the Defendants after the Court ordered their release.

83.     The Plaintiff, and those similarly situated, were held for an unreasonable period of time, unnecessary and unjustified by any circumstances, after the Court ordered their release.

84.     There was no reasonable suspicion that any Plaintiff or class members had committed a crime justifying being held for police investigation once the Court ordered their release. In the alternative, any concern could be resolved in 15 minutes.

85.     No particularized and objective basis exists to detain arrestees in Central Booking after they are ordered released.

86.     There was no probable cause to detain the Plaintiff or any class member beyond on the point when the Court ordered their release. In the alternative, any concern could be resolved in 15 minutes.

87.     Any probable cause to detain the Plaintiff or any class member is destroyed the moment the Court orders their release

88.     Arrestees are routinely subject to warrant and detainer searches at the time of arrest. The Plaintiff and class members were all recently arrested and held since arrest. Therefore, denying them their Court-ordered freedom to perform an additional warrant and detainer search just hours or days later is unreasonable and unnecessary.

89.     The detention of the Plaintiff and class members after judicial discharge and without reasonable suspicion or probable cause denied the Plaintiff and class members their constitutional rights to their freedom, and, in particular, freedom from bodily restraint.

90.     The length and scope of overdetention at Central Booking is unreasonable for all of the reasons stated above, including that the depravation of liberty at issue is near total in the detention setting and those wrongly detained are subject to an unusually high risk of violence at

Central Booking. When weighed against these factors, the State's administrative ease pales in comparison.

91.     To whatever extent a Court may later rule that the 8th Amendment governs this claim, overdetention is cruel and unusual. The circumstances at Central Booking are barbaric. It is a violent place with frequent assaults placing the physical safety of arrestees in serious danger. No telephone calls are allowed to arrestees for thirty days, so they are left to hope and wander about their loved ones, their jobs, their rent, their bills and other obligations. Arrestees like the Plaintiff and class members are not told when they will be released. This uncertainty compounds the physical and psychological stress for detainees. Situations are spartan at best. Heat, light, blankets, medical care, access to food, water and restrooms are minimal. Overcrowding often forces arrestees to sleep on the floor, sometimes in plastic "boats," sometimes with nothing. To hold someone in such circumstances entirely without just reason or cause is a cruel and unusual punishment.

92.     Moreover, as the Plaintiff and those similarly situated have been ordered released, any further detention is by definition cruel and unusual.

93.     The Defendants over detain the Plaintiff and those similarly situated without due process of law and in violation of both the substantive and procedural rights to Due Process under the 14th Amendment of the United States Constitution.

94.     The disparate impact on Black arrestees who are overrepresented in the class of persons overdetained represents a violation of the rights to equal protection under the law. Similarly situated white people are arrested less and released faster as a sole function of their race.

95.     As a direct and proximate result of the tortious and unconstitutional misconduct of the Defendants, and through no fault of their own, the Plaintiff and those similarly situated were caused to suffer injury, harm and damages of every legal description.

WHEREFORE, for the reasons stated above, Plaintiff Jamien Palmer respectfully requests the following relief for himself and all those similarly situated:

a)     Certification of such class, classes or subclasses as this Court hereinafter finds appropriate based on a Motion for Certification to be filed;

b)     Appointment of the undersigned as counsel for the class, classes or subclasses certified;

c)     Economic, non-economic, punitive and other monetary relief for the Plaintiff and each class member in excess of $75,000.00;

d)     Injunctive relief precluding unconstitutional and tortious overdetention at Baltimore Central Booking; and

e)     Costs and attorneys' fees.

## COUNT II – PATTERN AND PRACTICE OF UNCONSTITUTIONAL OVERDETENTION UNDER 42 USC § 1983 (*MONELL* CLAIM)

96.     All paragraphs elsewhere in this Complaint are incorporated herein by reference.

97.     Count II is a claim against the government entity defendants for a pattern or practice of unconstitutional overdetention under 42 USC § 1983.  The Plaintiff, for himself and all those similarly situated, pleads this claim alternatively under the 4th, 8th and 14th (due process and equal protection) Amendments to the United States Constitution.

98.     Overdetention for a constitutionally unreasonable period of time at Central Booking is the rule, not the exception.  Well over 75% of the almost 6,000 arrestees order

released by a Court annually are overdetained at Central Booking for more than 2 hours in order to complete the 15 minute discharge process.

99.     Approximately 3,000 people every year are detained in Central Booking more than 12 hours after a judge orders them released.

100.     Approximately 600 people every year are detained in Central Booking more than 24 hours after a judge orders them released.

101.     Approximately 180 people every year are detained in Central Booking more than 36 hours after a judge orders them released.  Some are detained for far longer.

102.     The practice of overdetention at Central Booking is widespread, affecting thousands of victims annually.

103.     The practice of overdetention at Central Booking evidences deliberate indifference to the rights of the arrestees to be freed upon Court order.

104.     In addition to permitting and promoting the widespread overdetention of arrests after they are released by Court order, the governmental entity defendants have failed to properly train, discipline and supervise the State employees operating Central Booking pursuant to *City of Canton, Ohio v. Harris*.

105.     The State failed and continues to fail to train officers regarding the constitutional requirements for releasing arrestees after a Court order.  The State maintains no standards for such releases and fails to enforce any standards it claims to have.

106.     The State fails to track arrestee releases in a way to determine the type of data disclosed for the first time in this lawsuit.  When asked via pre-suit Public Information Act request, the State responded that it did not track how quickly arrestees are released from Central Booking and could not provide this data.

17

107.    The State has received numerous complaints from arrestees abut over detention after Court discharge, and has been on actual and inquiry notice of the problem for a sufficient period of time to solve it and institute appropriate training.  The State has failed to do so.

108.    The State entity Defendants know, given the conditions at Central Booking and prior complaints, that a failure to train officers about the constitutional standards for releasing arrestees after Court order is causing the violation, and will continue to cause the violation, of the rights of the Plaintiff and those similar situated.  As a result, the governmental entity Defendants' failure to train reflects deliberate indifference to the constitutional rights of arrestees at Central Booking.

109.    The disparate impact on Black arrestees who are overrepresented in the class of persons overdetained represents a violation of the rights to equal protection under the law. Similarly situated white people are arrested less and released faster as a sole function of their race.

110.    The pattern or practice of overdetention directly and proximality caused constitutional injury to the Plaintiff and those similarly situated in the form of the loss of freedom.  The practices of the government entity Defendants are the moving force of the constitutional violation and there is a clear affirmative link between the policy and the particular constitutional violation alleged.

WHEREFORE, for the reasons stated above, Plaintiff Jamien Palmer respectfully requests the following relief for himself and all those similarly situated:

a)    Certification of such class, classes or subclasses as this Court hereinafter finds appropriate based on a Motion for Certification to be filed;

b)      Appointment of the undersigned as counsel for the class, classes or subclasses certified;

c)      Economic, non-economic, punitive and other monetary relief for the Plaintiff and each class member in excess of $75,000.00;

d)      Injunctive relief precluding unconstitutional and tortious overdetention at Baltimore Central Booking; and

e)      Costs and attorneys' fees.

### COUNT III – VIOLATION OF MARYLAND DECLARATION OF RIGHTS

111.    All paragraphs elsewhere in this Complaint are incorporated herein by reference.

112.    Count III is a claim against all Defendants under the Maryland Declaration of Rights.  The Plaintiff, for himself and all those similarly situated, pleads this claim alternatively under Articles 24, 26 and 19 of the Declaration of Rights and the allegations above are incorporated herein by reference.

WHEREFORE, for the reasons stated above, Plaintiff Jamien Palmer respectfully requests the following relief for himself and all those similarly situated:

a)      Certification of such class, classes or subclasses as this Court hereinafter finds appropriate based on a Motion for Certification to be filed;

b)      Appointment of the undersigned as counsel for the class, classes or subclasses certified;

c)      Economic, non-economic, punitive and other monetary relief for the Plaintiff and each class member in excess of $75,000.00; and

d)      Injunctive relief precluding unconstitutional and tortious overdetention at Baltimore Central Booking.

19

## COUNT IV – *LONGTIN* PATTERN OR PRACTICE CLAIM FOR VIOLATIONS OF THE MARYLAND DECLARATION OF RIGHTS

113.    All paragraphs elsewhere in this Complaint are incorporated herein by reference.

114.    Count IV is a claim against the governmental entity Defendants for a pattern or practice of violating the Maryland Declaration of Rights.  The Plaintiff, for himself and all those similarly situated, pleads this claim alternatively under Articles 24, 26 and 19 of the Declaration of Rights and the allegations above are incorporated herein by reference.

WHEREFORE, for the reasons stated above, Plaintiff Jamien Palmer respectfully requests the following relief for himself and all those similarly situated:

a)      Certification of such class, classes or subclasses as this Court hereinafter finds appropriate based on a Motion for Certification to be filed;

b)      Appointment of the undersigned as counsel for the class, classes or subclasses certified;

c)      Economic, non-economic, punitive and other monetary relief for the Plaintiff and each class member in excess of $75,000.00; and

d)      Injunctive relief precluding unconstitutional and tortious overdetention at Baltimore Central Booking.

## COUNT V – COMMON LAW FALSE IMPRISONMENT

115.    All paragraphs elsewhere in this Complaint are incorporated herein by reference.

116.    Count V is a Maryland common law claim against all Defendants for falsely imprisoning the Plaintiff and those similarly situated.

117.    The confinement of the Plaintiff and those similarly situated after a Court orders their release is non-consensual on the victim's part.

118.    The confinement of the Plaintiff and those similarly situated after a Court orders their release is intentional on the part of the perpetrators.

119.    The Plaintiff and those similarly situated are each aware during their confinement of their imprisonment and there is no lawful or available means of escape known to the victims.

120.    No law enforcement or other privilege permits the overdetentions at issue in this case.

WHEREFORE, for the reasons stated above, Plaintiff Jamien Palmer respectfully requests the following relief for himself and all those similarly situated:

a)      Certification of such class, classes or subclasses as this Court hereinafter finds appropriate based on a Motion for Certification to be filed;

b)      Appointment of the undersigned as counsel for the class, classes or subclasses certified;

c)      Economic, non-economic, punitive and other monetary relief for the Plaintiff and each class member in excess of $75,000.00; and

d)      Injunctive relief precluding unconstitutional and tortious overdetention at Baltimore Central Booking.

Respectfully submitted,

HANSEL LAW, PC

/s/ Cary Hansel/JB

Cary J. Hansel (CPF 9912150020)
2514 North Charles Street
Baltimore, MD 21218
Tel: (301) 461-1040
Fax: (443) 451-8606
cary@hansellaw.com
*Counsel for Plaintiff*

21

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

**JAMIEN PALMER,** for himself
and all others similarly situated,
499 Beaumont Avenue, Apt. 5
Baltimore, Maryland 21212,

    *Plaintiffs,*

    **vs.**

**STATE OF MARYLAND**
SERVE: Dereck E. Davis, Treasurer
State of Maryland Treasurer's Office
80 Calvert Street
Goldstein Treasury Building
Annapolis, Maryland 21401

and

**DEPARTMENT OF PUBLIC SAFETY &**
**CORRECTIONAL SERVICES**
SERVE: Robert L. Green, Secretary
300 East Joppa Road, Suite 1000
Towson, Maryland 21286

and

**DIVISION OF PRETRIAL DETENTION**
**& SERVICES**
SERVE: Michael R. Resnick, Esquire
Commissioner of Pretrial Detention & Services
400 E. Madison Street
Baltimore, MD 21202

and

**Frederick T. Abello, Warden**
Baltimore Central Booking & Intake Center
300 E. Madison Street
Baltimore, Maryland 21202,

    *Defendants.*

**Jury Trial Demanded**

Civil Case No. _____



2022 MAR 22  AM 10: 36
STATE TREASURER'S OFFICE

## LINE REGARDING SUMMONS

Dear Sir/Madam Clerk:

Please kindly accept the attached Complaint for filing, issue summons thereon, and return

to the undersigned counsel for service by private process.

Respectfully submitted,

HANSEL LAW, PC

/s/ _Cary Hansel MB_

Cary J. Hansel (CPF: 9912150020)
2514 North Charles Street
Baltimore, MD 21218
Tel: (301) 461-1040
Fax: (443) 451-8606
cary@hansellaw.com
*Counsel for Plaintiff*

2022 MAR 22 AM 10: 36
STATE TREASURER'S OFFICE

IN THE CIRCUIT COURT FOR Baltimore City, Maryland
*(City or County)*

## CIVIL - NON-DOMESTIC CASE INFORMATION REPORT

### DIRECTIONS

*Plaintiff:* This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Judge of the Court of Appeals pursuant to Rule 2-111(a).

*Defendant:* You must file an Information Report as required by Rule 2-323(h).

*THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING*

FORM FILED BY: ☒PLAINTIFF  ☐DEFENDANT    CASE NUMBER _____
*(Clerk to insert)*

CASE NAME: Jamien Palmer et al.                 vs.    State of Maryland, et al.
_____Plaintiff_____          _____Defendant_____

PARTY'S NAME: _____    PHONE: 443-676-4737

PARTY'S ADDRESS: 3206 Mondawmin Avenue Baltimore, Maryland 21216

PARTY'S E-MAIL: Jamien.Palmer@yahoo.com

**If represented by an attorney:**

PARTY'S ATTORNEY'S NAME: Cary Hansel                PHONE: 301-461-1040

PARTY'S ATTORNEY'S ADDRESS: 2514 N. Charles St. Baltimore, MD 21218

PARTY'S ATTORNEY'S E-MAIL: cary@hansellaw.com

JURY DEMAND? ☒Yes ☐No

RELATED CASE PENDING? ☐Yes ☒No  If yes, Case #(s), if known: _____

ANTICIPATED LENGTH OF TRIAL?: _____ hours   5  days

### PLEADING TYPE

New Case:  ☒Original          ☐ Administrative Appeal   ☐ Appeal
Existing Case: ☐ Post-Judgment   ☐ Amendment

*If filing in an existing case*, skip Case Category/ Subcategory section - go to Relief section.

### IF NEW CASE: CASE CATEGORY/SUBCATEGORY (*Check one box.*)

**TORTS**
☐ Asbestos
☐ Assault and Battery
☐ Business and Commercial
☐ Conspiracy
☐ Conversion
☐ Defamation
☒ False Arrest/Imprisonment
☐ Fraud
☐ Lead Paint - DOB of
  Youngest Plt: _____
☐ Loss of Consortium
☐ Malicious Prosecution
☐ Malpractice-Medical
☐ Malpractice-Professional
☐ Misrepresentation
☐ Motor Tort
☐ Negligence
☐ Nuisance
☐ Premises Liability
☐ Product Liability
☐ Specific Performance
☐ Toxic Tort
☐ Trespass
☐ Wrongful Death

**CONTRACT**
☐ Asbestos
☐ Breach
☐ Business and Commercial
☐ Confessed Judgment
  (Cont'd)
☐ Construction
☐ Debt
☐ Fraud

☐ Government
☐ Insurance
☐ Product Liability
**PROPERTY**
☐ Adverse Possession
☐ Breach of Lease
☐ Detinue
☐ Distress/Distrain
☐ Ejectment
☐ Forcible Entry/Detainer
☐ Foreclosure
  ☐ Commercial
  ☐ Residential
  ☐ Currency or Vehicle
  ☐ Deed of Trust
  ☐ Land Installments
  ☐ Lien
  ☐ Mortgage
  ☐ Right of Redemption
  ☐ Statement Condo
☐ Forfeiture of Property /
  Personal Item
☐ Fraudulent Conveyance
☐ Landlord-Tenant
☐ Lis Pendens
☐ Mechanic's Lien
☐ Ownership
☐ Partition/Sale in Lieu
☐ Quiet Title
☐ Rent Escrow
☐ Return of Seized Property
☐ Right of Redemption
☐ Tenant Holding Over

**PUBLIC LAW**
☐ Attorney Grievance
☐ Bond Forfeiture Remission
☐ Civil Rights
☐ County/Mncpl Code/Ord
☐ Election Law
☐ Eminent Domain/Condem.
☐ Environment
☐ Error Coram Nobis
☐ Habeas Corpus
☐ Mandamus
☐ Prisoner Rights
☐ Public Info. Act Records
☐ Quarantine/Isolation
☐ Writ of Certiorari

**EMPLOYMENT**
☐ ADA
☐ Conspiracy
☐ EEO/HR
☐ FLSA
☐ FMLA
☐ Workers' Compensation
☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
☐ Assumption of Jurisdiction
☐ Authorized Sale
☐ Attorney Appointment
☐ Body Attachment Issuance
☐ Commission Issuance

☐ Constructive Trust
☐ Contempt
☐ Deposition Notice
☐ Dist Ct Mtn Appeal
☐ Financial
☐ Grand Jury/Petit Jury
☐ Miscellaneous
☐ Perpetuate Testimony/Evidence
☐ Prod. of Documents Req.
☐ Receivership
☐ Sentence Transfer
☐ Set Aside Deed
☐ Special Adm. - Atty
☐ Subpoena Issue/Quash
☐ Trust Established
☐ Trustee Substitution/Removal
☐ Witness Appearance-Compel

**PEACE ORDER**
☐ Peace Order

**EQUITY**
☐ Declaratory Judgment
☐ Equitable Relief
☐ Injunctive Relief
☐ Mandamus

**OTHER**
☐ Accounting
☐ Friendly Suit
☐ Grantor in Possession
☐ Maryland Insurance Administration
☐ Miscellaneous
☐ Specific Transaction
☐ Structured Settlements

CC-DCM-002 (Rev. 04/2017)            Page 1 of 3

## IF NEW OR EXISTING CASE: RELIEF (Check All that Apply)

- ☐ Abatement
- ☐ Administrative Action
- ☐ Appointment of Receiver
- ☐ Arbitration
- ☐ Asset Determination
- ☐ Attachment b/f Judgment
- ☐ Cease & Desist Order
- ☐ Condemn Bldg
- ☐ Contempt
- ☐ Court Costs/Fees
- ☐ Damages-Compensatory
- ☐ Damages-Punitive

- ☐ Earnings Withholding
- ☐ Enrollment
- ☐ Expungement
- ☐ Findings of Fact
- ☐ Foreclosure
- ☐ Injunction
- ☐ Judgment-Affidavit
- ☐ Judgment-Attorney Fees
- ☐ Judgment-Confessed
- ☐ Judgment-Consent
- ☐ Judgment-Declaratory
- ☐ Judgment-Default

- ☐ Judgment-Interest
- ☐ Judgment-Summary
- ☐ Liability
- ☐ Oral Examination
- ☐ Order
- ☐ Ownership of Property
- ☐ Partition of Property
- ☐ Peace Order
- ☐ Possession
- ☐ Production of Records
- ☐ Quarantine/Isolation Order
- ☐ Reinstatement of Employment

- ☐ Return of Property
- ☐ Sale of Property
- ☐ Specific Performance
- ☐ Writ-Error Coram Nobis
- ☐ Writ-Execution
- ☐ Writ-Garnish Property
- ☐ Writ-Garnish Wages
- ☐ Writ-Habeas Corpus
- ☐ Writ-Mandamus
- ☐ Writ-Possession

*If you indicated Liability above*, mark one of the following. This information is not an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded. ☐ Liability is not conceded, but is not seriously in dispute. ☐ Liability is seriously in dispute.

## MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs)

☐ Under $10,000    ☐ $10,000 - $30,000    ☒ $30,000 - $100,000    ☐ Over $100,000

☐ Medical Bills $_____    ☐ Wage Loss $_____    ☐ Property Damages $_____

## ALTERNATIVE DISPUTE RESOLUTION INFORMATION

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)

A. Mediation ☐Yes ☒No          C. Settlement Conference ☐Yes ☒No
B. Arbitration ☐Yes ☒No         D. Neutral Evaluation ☐Yes ☒No

## SPECIAL REQUIREMENTS

☐ If a Spoken Language Interpreter is needed, **check here and attach form CC-DC-041**

☐ If you require an accommodation for a disability under the Americans with Disabilities Act, **check here and attach form CC-DC-049**

## ESTIMATED LENGTH OF TRIAL

*With the exception of Baltimore County and Baltimore City, please fill in the estimated LENGTH OF TRIAL.* *(Case will be tracked accordingly)*

☐ 1/2 day of trial or less          ☐ 3 days of trial time
☐ 1 day of trial time               ☒ More than 3 days of trial time
☐ 2 days of trial time

## BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM

*For all jurisdictions, if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

☐ **Expedited**- Trial within 7 months of          ☐ **Standard** - Trial within 18 months of
  Defendant's response                               Defendant's response

EMERGENCY RELIEF REQUESTED

## COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE MANAGEMENT PROGRAM (ASTAR)

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES under Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.*

☐ **Expedited** - Trial within 7 months of Defendant's response          ☐ **Standard** - Trial within 18 months of Defendant's response

**IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY, OR BALTIMORE COUNTY, PLEASE FILL OUT THE APPROPRIATE BOX BELOW.**

### CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)

| | | |
|---|---|---|
| ☐ | Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ☐ | Civil-Short | Trial 210 days from first answer. |
| ☒ | Civil-Standard | Trial 360 days from first answer. |
| ☐ | Custom | Scheduling order entered by individual judge. |
| ☐ | Asbestos | Special scheduling order. |
| ☐ | Lead Paint | Fill in: Birth Date of youngest plaintiff ........................... . |
| ☐ | Tax Sale Foreclosures | Special scheduling order. |
| ☐ | Mortgage Foreclosures | No scheduling order. |

### CIRCUIT COURT FOR BALTIMORE COUNTY

| | | |
|---|---|---|
| ☐ | Expedited (Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ☐ | Standard (Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ☐ | Extended Standard (Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ☐ | Complex (Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

3/14/2022
Date

2514 N Charles Street
Address

Baltimore            MD        21218
City                State     Zip Code

Signature of Counsel / Party

Cary Hansel
Printed Name

2022 MAR 22  AM 10: 36
STATE TREASURER'S OFFICE