IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

**JAMIEN PALMER,** for himself
and all others similarly situated,
3206 Mondawmin Avenue
Baltimore, Maryland 21216,

and

**DESHAWN WILSON**, for himself
and all others similarly situated,
2609 Mura Street
Baltimore, Maryland 21213

and

**CLAYTON ROGERS**
4341 Fm 1980
Marble Falls, Texas 78657

and

**BEATRICE ELMORE**
4114 Potter Street, Apt. 101
Baltimore, Maryland, 21229

      *Plaintiffs*,

      **vs.**

**STATE OF MARYLAND**
SERVE: Dereck E. Davis, Treasurer
State of Maryland Treasurer's Office
80 Calvert Street
Goldstein Treasury Building
Annapolis, Maryland 21401

and

**DEPARTMENT OF PUBLIC SAFETY &
CORRECTIONAL SERVICES**
SERVE: Robert L. Green, Secretary
300 East Joppa Road, Suite 1000
Towson, Maryland 21286

and

**Jury Trial Demanded**

Civil Action No. 22-cv-899-BAH

**DIVISION OF PRETRIAL DETENTION
& SERVICES**
SERVE: Michael R. Resnick, Esquire
Commissioner of Pretrial Detention & Services
400 E. Madison Street
Baltimore, MD 21202

and

**Frederick T. Abello, Warden,**
in his individual and official capacities
Baltimore Central Booking & Intake Center
300 E. Madison Street
Baltimore, Maryland 21202,

  *Defendants.*

## FIRST AMENDED COMPLAINT WITH CLASS CLAIMS

COMES NOW the above-named Plaintiffs, for themselves, all others similarly situated, and such classes and subclasses as may hereinafter be certified, by and through counsel, Cary J. Hansel, Kristen M. Mack, and the law firm of Hansel Law, P.C., and sues the Defendants listed above, stating as follows:

## INTRODUCTION

1. This case arises from the long-standing practice at the Baltimore Central Booking & Intake Center ("Central Booking") of holding people who have been arrested by the police for an unconstitutionally long period of time after the Court has ordered their release.

2. Based on a representative sample of 2019 data, people presumed innocent and ordered released are held, on average, more than 14 hours after their release is ordered. In 2019, seventeen percent of people were held more than 20 hours after a judge signed an order for their release. Almost 10% of people in 2019 were held more than 24 hours after their release had

been ordered. Approximately 3% of people in 2019 were held for more than 36 hours and *up to 5 days* after a judge or commissioner grants their freedom.

3.     Based on a representative sample of 2019 data, People whose charges have been entered *nolle prosequi* and who have no more pending charges are held an average of more than 24.98 hours at Central Booking after a judge or commissioner orders their release.

4.     In a random sample of 100 arrests from 2019, the total hours of overincarceration endured by the victims was 1,483.08 (2 months of freedom).

5.     The statistics above are derived from 2019, which is prior to the pandemic. During the pandemic, the risk of incarceration increased exponentially as Covid-19 tore through detention settings. Despite calls to release persons faster, including from Maryland's Attorney General, overincarceration continued.

6.     In the year 2020, the average time between a court ordering the release of a detainee and his or her actual release was over 19 hours, with the median time being over 9 hours. Upon information and belief, all other years from 2019 to the present involved an even longer period of over detention.

7.     Even after BCDC personnel begin working on a release after receipt of a Court order, the average time in 2020 to release from the first BCDC computer entry towards that end in the BCDC computer system is over 15 hours, with the median time being over 6 hours. Upon information and belief, all other years from 2019 to the present involved an even longer period of over detention.

8.     Representatives of BCDC have testified that the longest total time to release a detainee, using the longest estimates given for each step, is under one hour and forty five minutes.

2

9.    Many detainees are released in less than 1 hour, demonstrating that releases in far less than 1 hour and 45 minutes are possible.

10.    In the year 2020 alone, over 2000 people were held longer than four hours after a Court ordered their release.  Upon information and belief, all other years from 2019 to the present involved even more people held for longer than four hours after a Court ordered their release.

11.    In the year 2020 alone, over 2000 people were held longer than four hours even after the first BCDC began the process of releasing them pursuant to a Court order.  Upon information and belief, all other years from 2019 to the present involved even more people held longer than four hours even after the first BCDC began the process of releasing them pursuant to a Court order.

12.    Examples of severe overincarceration include that, in December of 2020, a man was held in Central Booking for 8 days after the court ordered his release.  In October of 2020, a man was held for 6 days after a judge ordered him freed.

13.    In 2020, one man was held over 216 days after he was ordered released.

14.    In 2021, the average length of overincarceration at Central Booking remained well above the historical 2019 averages.

15.    Upon information and belief, people have been held by the State at Central Booking for unconstitutionally lengthy periods of time after a court orders their release since prior to 2017 through and including the filing of this Complaint.

16.    Both prior to and during the pandemic, the State of Maryland unconstitutionally kept people incarcerated for unreasonable periods of time at Central Booking after they were ordered released by the Court.

17.     Documents the State was forced to produce under the Public Information Act by order of this Court demonstrate that the entire process of clearing an arrestee for release can be completed in just 15 minutes.  This is not surprising because the process is essentially the same one used by police officers when drivers are stopped at the roadside: an identification check and a computer check for warrants or detainers.

18.     The State needs no time to transport arrestees before release from Central Booking because their bail review hearings are conducted via video such that the arrestee never leaves Central Booking.

19.     The State needs no time to gather or return detainee property before detainees are released because the policy at Central Booking is that property is picked up after release at 301 East Eager Street (24/7 - 365 days a year) for property held up to three days, or at the Jail Industries Building, 531 East Madison Street, for property held longer.

20.     The State only needs 15 minutes to process someone out of Central Booking if the process were properly handled with improved procedures, but even under current conditions, the longest it should take is 1 hour and forty five minutes.

21.     Central Booking is located in Baltimore City, where public transportation is available around the clock.  Most, if not all, people living in Baltimore can walk home from Central Booking.  People need not be held for the purposes of waiting until they are able to leave the premises and doing so against their will would be unconstitutional in any event.

22.     Even allowing the State 2 hours to complete the release process, the amount of additional time the State holds people in Central Booking on an annual basis averages a total of over 8 years of freedom.

23.     *Every year, people in Baltimore are robbed of 8 years of freedom by the State.*

24.    This stolen freedom costs people not just time, but money, jobs, their apartments, property like cars repossessed, and even custody of their children.

25.    When the State unconstitutionally and tortiously violates the rights of people by keeping them incarcerated after they have been ordered released, the State puts their health, physical safety, and even lives at risk.

26.    The State's failure to release citizens entitled to their freedom is compounded by the State's failure to maintain a safe custodial environment at Central Booking.

27.    On average, there are almost 2 serious reported incidents of detainee on detainee violence *every day* in Central Booking.  This figure does not include less serious or unreported incidents.  This figure also does not include the risk of assault by the guards at Central Booking.

28.    Less than a year prior to the filing of this Complaint, at least three guards at Central Booking were criminally indicted for assaulting inmates.

29.    Central booking is a violent and dangerous place where every additional moment places a person at greater risk of physical harm and death.

30.    Incarcerating people in Central Booking for any period of time beyond the minimum required by law is unreasonable, unconstitutional, and dangerous.  It also wastes the taxpayer's money.

31.    Officials at Central Booking unconstitutionally favor those who can afford to purchase their freedom with bail bonds.  In 2019, people who paid a bond spend, on average, just 11.1 hours in central booking after they are ordered released.  As noted above, when the State drops the charges, people languished in custody for an average of over 24 hours beyond the time when they were ordered free.  This means that people who pay, but still have pending charges,

are preferentially released *more than twice as fast* as those whose charges the State has decided not to pursue.

32.    Those who pay a bond to be released, but still have pending charges, are released significantly sooner after their hearing than those whose charges were dismissed.  So, a potential criminal with charges pending can pay to be released faster than an innocent person with no charges pending.

33.    Police and the justice system disproportionately arrest and detain Black people.  A collection of over 100 studies proving these and related disparate impacts are collected here: https://www.washingtonpost.com/graphics/2020/opinions/systemic-racism-police-evidence-criminal-justice-system/.  There is no longer any doubt among scholars on these points.

34.    Black people are disproportionately the victims of overdetention in Central Booking.  Baltimore is approximately 63% African American, but African Americans represent approximately 95% of those overdetained after a judge orders their release at Central Booking.

35.    Black people are disproportionately over detained the longest and have been for at least every year since 2019 to the present.

36.    Overdetention at Central Booking in an implicitly and explicitly racist policy.

37.    Jamien Palmer, whose story is told below, is one of the innocent Black victims of the State's careless pattern and practice of overdetention at Central Booking.  He is also a father, a husband, and an information technology professional with a bachelor's degree.  He had no criminal record other than the false charges which caused him to be arrested in Baltimore and taken to Central Booking, where, even though the charges were dropped, he was overdetained for almost 22 hours after the court ordered his release.

38.    Deshawn Wilson, whose story is also told below, is one of the innocent Black victims of the State's careless pattern and practice of overdetention at Central Booking.

39.    Clayton Rogers, whose story is also told below, is another one of the innocent Black victims of the State's careless pattern and practice of overdetention at Central Booking.

40.    Beatrice Elmore, whose story is also told below, is another one of the innocent Black victims of the State's careless pattern and practice of overdetention at Central Booking.

## JURISDICTION AND VENUE

41.    Jurisdiction is proper in this Honorable Court under 28 U.S. Code § 1331 because this is a civil action arising under the Constitution, laws, or treaties of the United States..

42.    Venue is proper in this Honorable Court under 28 U.S.C. § 1391 because the parties are domiciled in Maryland, or organized under Maryland law, and the events at issue took place in Baltimore, Maryland.

43.    Plaintiff Jamien Palmer timely submitted notice of his claim and the claims of those similarly situated under the Maryland Public Information Act, which was timely received by the State on December 20, 2019.

## PARTIES

44.    Plaintiff Jamien Palmer is, and was at all times relevant to this Complaint, an adult resident of Baltimore, Maryland residing at the address in the caption.

45.    Plaintiff DeShawn Wilson is, and was at all times relevant to this Complaint, an adult resident of Baltimore, Maryland residing at the address in the caption.

46.    Plaintiff Clayton Rogers is currently an adult resident of Marble Falls, Texas, residing at the address in the caption, but was at all times relevant to this Complaint, an adult resident of Baltimore, Maryland residing at 10 East Madison Street, Baltimore, MD.

47.     Plaintiff Beatrice Elmore is, and was at all times relevant to this Complaint, an adult resident of Baltimore, Maryland and currently resides at the address in the caption.  At the relevant time to this Complaint she resided at 726 North Fremont Avenue, Baltimore, Maryland 21217.

48.     Defendant State of Maryland is a *sui juris* political division.

49.     Defendant Department of Public Safety and Correctional Services is a *sui juris* state agency created and operating under the laws of the State of Maryland, with an office located at 300 East Joppa Road, Towson, Maryland 21286.

50.     Defendant Division of Pretrial Detention & Services is a *sui juris* division of the Department of Public Safety and Correctional Services, Department of Public Safety and Correctional Services, with an officer located at 400 E. Madison Street, Baltimore, MD 21202.

51.     Frederick T. Abello is, and at all relevant times was, the Warden at the Baltimore Central Booking & Intake Center, with an address of 300 E. Madison Street, Baltimore, Maryland 21202.  Warden Abello is sued in his personal and official capacities.  Warden Abello has direct supervisory control and final decision making authority at Central Booking over the processing and release of arrestees who have been released from commitment by a judge.

## ADDITIONAL FACTS COMMON TO ALL COUNTS

### Jamien Palmer's Story

52.     On or about March 14, 2019, at approximately 7:30 a.m., Plaintiff Jamien Palmer (hereinafter "Plaintiff Palmer") was driving into Baltimore with his two children and his girlfriend's son in the car when he was pulled over by transit police.  He was informed that there was a warrant out for his arrest and was handcuffed.

53.     The officer called for backup and searched Plaintiff Palmer's vehicle.  After the search, the officer placed Plaintiff Palmer in his police car.  The officer told Plaintiff Palmer that he was "lucky" the officer "saw those kids' heads pop up because these charges make you seem like a violent person," and if his kids had not been present "[y]ou probably would have been roughed up."

54.     Plaintiff Palmer was transported to Central Booking under the care and control of the State of Maryland, the Department of public Safety and Correctional Services, the Division of Pretrial and Detention Services, and Warden Abello.

55.     Central Booking opened in July 1995 in Baltimore.  All adults arrested in Baltimore are processed (booked) there.

56.     The booking process begins with a bar-coded bracelet assigned to the detainee for tracking purposes.  Then, the detainee's personal, descriptive and demographic information is entered into the System.  Biometric identification is done by laser-scan digitized fingerprinting and digitized video photos, which can be transmitted electronically for what the State calls "quick comparison" on the State's website for Central Booking.  *See* https://msa.maryland.gov/msa/mdmanual/22dpscs/html/22agen.html#central.  This eliminates the need to spend any significant amount of time identifying an arrestee after they are ordered released.

57.     As the booking process continues, the arresting officer enters data into a computer system about the arrest and charges.  This report goes to an on-site District Court Commissioner who conducts an initial hearing to determine probable cause, set bail, and assign a trial date.  After identification, the detainee is interviewed by a pretrial investigator.  Booking then is

completed.  The State claims, on its Central Booking website, that, "With new technology, the process is expected to take under four hours."  *Id*.

58.    After booking, the detainee either is released on recognizance, posts bail, or is assigned to the Center.

59.    State employees at Central Booking, including the Warden, have access there to a statewide criminal justice information network, the Automated Booking System is used by the Center.  This system makes it possible to eliminate any significant wait associated with identifying an arrestee upon judicial discharge.  According to the website maintained about the Central Booking facility by the State of Maryland, **"the System quickly identifies a detainee, and any previous criminal history or outstanding arrest warrants."**  *See* https://msa.maryland.gov/msa/mdmanual/22dpscs/html/22agen.html#central.

60.    Approximately twelve hours after Plaintiff Palmer arrived at Central Booking, he was advised of his rights before a Commissioner.  Several hours later, approximately between 10:00 p.m. and midnight, he went before a second Commissioner and his bail was set at no bail. The next day, he went before a District Court Judge.

61.    On March 15, 2019 at 3:33 pm, the District Court for Baltimore City ordered Plaintiff Palmer released on his own recognizance.

62.    Despite a judge ordering Plaintiff Palmer's release, he was returned to a holding cell at Central Booking, where he waited for his release.  Within four hours, the other four individuals Plaintiff Palmer was held with had been moved and Plaintiff Palmer alone waited for his release.

63.    Throughout the night and into the next day, each time the shift changed, Plaintiff Palmer attempted to bring the correctional officers' attention to his release papers.  Each time,

the correctional officers told him that he was supposed to have been released on the last shift, and to "hold tight."

64.     Plaintiff Palmer was not released from Central Booking until March 16, 2019 at approximately 1:30 pm.

65.     Plaintiff Palmer was detained for 21.95 hours (21 hours and 57 minutes) after the court ordered his release.

66.     Even allowing a reasonable period of time for processing, Plaintiff Palmer was unconstitutionally overdetained by the Defendants.

67.     Even allowing a reasonable period of time for processing, Plaintiff Palmer was falsely imprisoned by the Defendants.

68.     All charges against Plaintiff Palmer terminated in his favor.  He was cleared of all wrongdoing.  The charges were almost immediately identified by authorities as false and coming from a mentally ill individual.

**DeShawn Wilson's Story**

69.     On or about April 28th, 2021, Plaintiff DeShawn Wilson (hereinafter "Plaintiff Wilson") was driving home from his mother's house in his girlfriend's car in Baltimore City when several black SUVs attempted to box him in while he was stopped.  Plaintiff Wilson had no idea who these people were or what was happening, and he was scared, so he quickly drove away.  The vehicles continued to chase him.  Eventually, Plaintiff Wilson noticed that the vehicles had turned police lights on.  Plaintiff Wilson stopped and exited the vehicle he was driving.  He was taken down to the ground by the police and was told he was being arrested for "running from the police."

70.     Plaintiff Wilson was transported to Central Booking under the care and control of the State of Maryland, the Department of public Safety and Correctional Services, the Division of Pretrial and Detention Services, and Warden Abello.

71.     Plaintiff Wilson later learned that the police had found a gun and some drugs a couple of blocks away from where Plaintiff Wilson was arrested, and in two different locations, and they charged Plaintiff Wilson with possession of narcotics with intent to distribute and possession of a handgun.

72.     On or about November 29, 2021 at approximately 9:00 am, the Circuit Court for Baltimore City ordered Plaintiff Wilson released.  Despite a judge ordering Plaintiff Wilson's release, he was put into a cell with at least five other people where he waited for his release. Three of the other five individuals Plaintiff was held with were released at some point during the day on November 29, 2021.  Plaintiff and the other two individuals were held overnight into the next morning.

73.     Throughout the day and night, each time the shift changed, Plaintiff attempted to bring the correctional officers' attention to his release papers.  Each time, the correctional officers told him that there was a "computer issue."

74.     Plaintiff Wilson was not released from Central Booking until approximately 6:00 am on or about November 30, 2021.

75.     Plaintiff Wilson was detained for approximately 18 hours after the court ordered his release.

76.     Even allowing a reasonable period of time for processing, Plaintiff Wilson was unconstitutionally overdetained by the Defendants.

77.     Even allowing a reasonable period of time for processing, Plaintiff Wilson was falsely imprisoned by the Defendants.

**<u>Clayton Rogers's Story</u>**

78.     On or about November 18, 2019 at approximately 2:00 am, Plaintiff Clayton Rogers (hereinafter "Plaintiff Rogers") was asleep when he was woken up by a phone call from the police.  The police asked for Plaintiff Rogers location, and he complied and they came and arrested him.  The arresting officer said that Clayton "didn't seem like the type that should be getting arrested."

79.     Plaintiff Rogers was transported to Central Booking under the care and control of the State of Maryland, the Department of public Safety and Correctional Services, the Division of Pretrial and Detention Services, and Warden Abello.

80.     Two weeks prior, Plaintiff Rogers's longtime girlfriend left to go visit her hometown in Texas.  While she was gone, Plaintiff Rogers broke up with her.  After he broke up with her, she made the allegation that Plaintiff Rogers had raped her.  As a result, Plaintiff Rogers was arrested for the allegation of rape.

81.     Approximately 24 hours after Plaintiff Rogers arrived at Central Booking, he was advised of his rights before a Commissioner.  Approximately four days later, he went before a Judge or Commissioner and he was denied bail.

82.     Approximately 30 days later, on or about December 20, 2019 at approximately 8:00 am, Plaintiff Rogers was ordered to be released for house arrest pending his trial.  All arrangements for house arrest had been made and set up before Plaintiff Rogers was ordered to be released.

83.     Despite a judge ordering Plaintiff Rogers's release on December 20, 2019, he was not released until approximately 4:00 am on December 24, 2019—almost a full four days after he was ordered to be released.

84.     Plaintiff Rogers was detained for approximately 90 hours after the court ordered his release.

85.     On the last day that Plaintiff Rogers was in Central Booking, a day that he was no longer supposed to be there, he woke up to the bunks being pepper sprayed by a correctional officer.  Plaintiff Rogers was unsure why this was happening, but he got residual pepper spray in his eyes as a result and was not provided any treatment despite how painful it was.

86.     Even allowing a reasonable period of time for processing, Plaintiff Rogers was unconstitutionally overdetained by the Defendants.

87.     Even allowing a reasonable period of time for processing, Plaintiff Rogers was falsely imprisoned by the Defendants.

88.     All charges against Plaintiff Rogers terminated in his favor.  He was cleared of all wrongdoing.  The charges were identified by authorities as false and coming from his ex-girlfriend that was upset that he had broken up with her.

**Beatrice Elmore's Story**

89.     On or about June 6, 2019, Plaintiff Beatrice Elmore (hereinafter "Plaintiff Elmore") was driving to drop a few of her brother's friends off at their homes in Baltimore City when she was pulled over for "dark tint."  Despite the "dark tint" the officers stated that they had seen movement in the backseat even though it was evening time and the sun was setting.  The officers asked Plaintiff Elmore if they could search her vehicle.  She had nothing to hide so she agreed to the search.  During the search, a gun was found on the backside of the seat in front of

14

one of her brother's friends that was sitting in the backseat.  Plaintiff Elmore had no knowledge about this gun, but, nevertheless, she was arrested for charges relating to the gun being in the car.

90.     Plaintiff Elmore was transported to Central Booking under the care and control of the State of Maryland, the Department of public Safety and Correctional Services, the Division of Pretrial and Detention Services, and Warden Abello.

91.     After being processed, Plaintiff Elmore was advised of her rights  before a Commissioner. More than five hours later, she went before a second Commissioner and she was given bail.

92.     On June 7, 2019 at approximately 8:07 pm, the District Court for Baltimore City ordered Plaintiff Elmore released.

93.     Despite a judge ordering Plaintiff Elmore's release, she was returned to a holding cell at Central Booking, where she waited for her release. Each time Plaintiff attempted to bring the correctional officers' attention to her release papers and she was told that they were still conducting a "warrant search."

94.     Plaintiff Elmore was not release from Central Booking until June 8, 2019 at approximately 8:00 am.

95.     Plaintiff Elmore was detained for approximately 11.89 hours (11 hours and 53 minutes) after the court ordered her release.

96.     Even allowing a reasonable period of time for processing, Plaintiff Elmore was unconstitutionally overdetained by the Defendants.

97.     Even allowing a reasonable period of time for processing, Plaintiff Elmore was falsely imprisoned by the Defendants.

15

## CLASS ACTION ALLEGATIONS

98.    All allegations elsewhere in this Complaint are incorporated herein by reference.

99.    As to each count below, the plaintiff brings the claim in his own right, but also as a class action, pursuant to Maryland Rule 2-231 and/or Fed. R. Civ. P.23, on behalf of all of those similarly situated.

100.    The Plaintiffs will seek the certification of at least four classes, all of which they adequately and fairly represents.

101.    The "Constitutional Class" consists of arrestees *unconstitutionally* overdetained at Central Booking after the court orders their release to freedom.

102.    The "Tort Class" consists of arrestees *tortiously* overdetained at Central Booking after the court orders their release to freedom.

103.    The "Racial Discrimination Class" consists of Black arrestees who are disproportionately the victims of the longest periods of overdetention.

104.    The "Innocent Class" consists or persons whose charges are dismissed or dropped, but who are overdetained disproportionately longer than those with pending charges who pay a bond to be released.

105.    Including data from the last three years prior to filing this Complaint, the Constitutional Class and the Tort Class each consist of approximately 20,000 people.

106.    Including data from the last three years prior to filing this Complaint, the Racial Discrimination Class consists of approximately 10,000 people.

107.    Including data from the last three years prior to filing this Complaint, the Innocent Class consists of approximately 5,000 people.

108.    Each class is so numerous that joinder of all members is impracticable.

109.    There are common questions of law and fact that affect the rights of every member of each respective class, and the types of relief sought are common to every member of each respective class.  The same conduct by the Defendants has injured every member of each respective class in the same way.  Each prospective class member's loss is measured in the same way: the value of the time overdetained in the Central Booking environment.

110.    The Constitutional Class is predominated by questions of law or fact common to the claims of all members.  These include, but are not limited to:

a.    given the specific shared conditions at Central Booking and the demonstrated ability to process inmates out in as little as 15 minutes, what is the constitutional standard for releasing arrestees?

b.    how quickly can arrestees reasonably be freed from Central Booking once a court orders their release?

111.    The Tort Class is predominated by questions of law or fact common to the claims of all members.  These include, but are not limited to:

a.    once any probable cause to arrest and detain was terminated by a Court's release order, how quickly must an arrestee be released from custody given the specific conditions at Central Booking?

b.    what value should be placed on each hour of overdetention and what injunctive relief is appropriate?

112.    The Race Class is predominated by questions of law or fact common to the claims of all members.  These include, but are not limited to:

a.    what is the degree and extend of the disproportionate overdetention for the longest periods of Black people?

b.      are there any non-race-based reasons for disproportionate overdetention for the

longest periods of Black people?

113.    The Innocent Class is predominated by questions of law or fact common to the claims of

all members.  These include, but are not limited to:

a.   what is the degree and extend of the disproportionate overdetention for the longest

periods of people who no longer have charges versus those who pay for their freedom

through a bond?

b.   are there any permissible reasons for disproportionate overdetention of people

who do onto pay for their freedom through a bond?

114.    The claims of Jamien Palmer, Deshawn Wilson, Clayton Rogers and Beatrice

Elmore are typical of the claims of the four classes identified above.  In fact, their claims are

indistinguishable from those of every other class member.  Each was overdetained at Central

Booking for an unreasonable, unconstitutional and tortious period of time after a judge ordered

their release.

115.    Jamien Palmer, Deshawn Wilson, Clayton Rogers and Beatrice Elmore will

adequately represent the claims of the class.  Mr. Palmer and the law firm representing the

named plaintiffs here, have spent two years investigating the issues and obtaining the data

necessary to file this case.  This included filing Public Information Act requests and successfully

suing the State to force the production of withheld documents which form the basis of the

allegations herein.  The relevant documents were ordered produced in the matter of *Palmer v.*

*Dept. of Public Safety and Correctional Services*, Circuit Court for Baltimore City, Maryland,

Case No: 24C20003017.  In her ruling ordering these materials produced, a Baltimore City

Circuit Court Judge held that the request for the documents necessary for this lawsuit:

> seeks information pertaining to the twin core constitutional rights of liberty and due process of thousands of Maryland citizens, many (if not most) of whom lack the resources and wherewithal to do what Plaintiff and his counsel intend to pursue. Specifically, Plaintiff intends to bring light to what he contends is a systemic failure to process and release incarcerated or confined individuals within a constitutionally permissive period of time following issuance of an RFCO; and that during the period of the State's unconstitutional confinement of these individuals, their physical safety is at risk due to the prevalence of violent assaults in detention settings. The court finds the benefit to the public to be derived from the instant action is arguably the most primal of all: to guard and protect the right to live free from unlawful government action.

*See Palmer v. Dept. of Public Safety and Correctional Services*, Circuit Court for Baltimore City, Maryland, Case No: 24C20003017; Court Order of 10/14/21. Acquiring the documents necessary to prepare this lawsuit required not only requests and a lawsuit, but a trial on the merits of the Public Information Act claims. In successfully pursuing all of this, Jamien Palmer and the law firm bringing this case have proven that they will fairly and adequately protect the interests of the class.

116. The prosecution of separate actions by individual members of the classes would create a risk of inconsistent or varying adjudications with respect to individual members of the classes that would establish incompatible standards of conduct for the party opposing the classes. The primary issues in this case will be the establishment of a constitutional standard, without disproportionality, for the release of arrestees from Central Booking given the unique circumstances at the facility. There is a high degree of risk that inconsistent standards would be adopted if these claims are not tried together as a class action with appropriate subclasses as identified above.

117. For the same reasons, the prosecution of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the class

that would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

118.    The State has refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.  Specifically, the State has refused to timely release each class member from Central Booking after the release is ordered by the Court, and, in the case of the Race and Innocent Classes, has done so disproportionately.

119.    For all of the reasons above, questions of law or fact common to the members of the classes predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

120.    The members of the classes have little interest in individually controlling the prosecution of separate actions.  This is so for two reasons.  First, each class member has the same interest in injunctive relief reducing the period of permissible overdetention to the minimum.  Second, the value of the claim of each class member is likely in a range such that individual cases may not be feasible to bring at all.

121.    Absent a class action, most members of the classes likely would find the cost of litigating their claims to be prohibitive, and will have no effective remedy at law.  The class treatment of common question of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

122.    The only litigation concerning the controversy already commenced by members of the class is the groundwork done in the Public Information Act lawsuit by the plaintiff here.

As the Circuit Court noted in that case, it was pursued for the specific purpose of obtaining the data necessary to bring this claim.

123.    Concentrating the litigation of the claims in this Court is desirable because the claims involve arrests and detentions in Baltimore, where this Court sits.

124.    No difficulties are likely to be encountered in the management of the proposed class action, and any imagined difficulties would be far outweighed by the benefits of class certification.

125.    To the extend revealed by discovery and investigation, there may be additional appropriate classes and/or subclasses from the above class definitions which are broader and/or narrower in time or scope of exposure.

126.    Excluded from the classes are Defendants' officers, agents or employees and members of their immediate families; and the judicial officers to whom this case is assigned, their staff and the members of their immediate families.

127.    Excluded from the classes are any local, state, or federal government entities.

128.    Excluded from the classes are any individuals with detainers, warrants or other similar lawful grounds to remain detained after the Court orders their release.

129.    The Plaintiffs and those similarly situated have suffered, and will continue to suffer, harm and damages as a result of Defendants' unlawful and wrongful conduct.

130.    Class certification is also proper for reasons of judicial economy.  Many, if not all, of the class members would have to be called as witnesses in any individually litigated case as their testimony will provide evidence of notice, pattern and practice.  As such, each Plaintiff would be required to testify numerous times, as would the Defendants and independent witnesses

in each respective case.  Litigating these cases individually would be a significant waste of resources for this Court, these Plaintiffs and the Defendants.

131.    No unusual difficulties are likely to be encountered in the management of this action as a class action.

**CLAIMS FOR RELIEF**

COUNT I – UNCONSTITUTIONAL OVERDETENTION UNDER 42 USC § 1983

132.    All paragraphs elsewhere in this Complaint are incorporated herein by reference.

133.    Count I is a claim against all Defendants for unconstitutional overdetention under 42 USC § 1983.  The Plaintiffs, for themselves and all those similarly situated, plead this claim alternatively under the 4th, 8th and 14th (substantive and procedural due process and equal protection) Amendments to the United States Constitution.

134.    The Plaintiffs, and those similarly situated, were wrongly detained by the Defendants after the Court ordered their release.

135.    The Plaintiffs, and those similarly situated, were held for an unreasonable period of time, unnecessary and unjustified by any circumstances, after the Court ordered their release.

136.    There was no reasonable suspicion that any Plaintiffs or potential class members had committed a crime justifying being held for police investigation once the Court ordered their release.  In the alternative, any concern could be resolved in 15 minutes.

137.    No particularized and objective basis exists to detain arrestees in Central Booking after they are ordered released.

138.    There was no probable cause to detain the Plaintiffs or any class members beyond the point when the Court ordered their release.  In the alternative, any concern could be resolved in 15 minutes.

22

139.    Any probable cause to detain the Plaintiffs or any class member is destroyed the moment the Court orders their release.

140.    Arrestees are routinely subject to warrant and detainer searches at the time of arrest.  The Plaintiffs and class members were all recently arrested and held since arrest.  Therefore, denying them their Court-ordered freedom to perform an additional warrant and detainer search just hours or days later is unreasonable and unnecessary.

141.    The detention of the Plaintiffs and class members after judicial discharge and without reasonable suspicion or probable cause denied the Plaintiff and class members their constitutional rights to their freedom, and, in particular, freedom from bodily restraint.

142.    The length and scope of overdetention at Central Booking is unreasonable for all of the reasons stated above, including that the depravation of liberty at issue is near total in the detention setting and those wrongly detained are subject to an unusually high risk of violence at Central Booking.  When weighed against these factors, the State's administrative ease pales in comparison.

143.    To whatever extent a Court may later rule that the 8th Amendment governs this claim, overdetention is cruel and unusual.  The circumstances at Central Booking are barbaric.  It is a violent place with frequent assaults placing the physical safety of arrestees in serious danger.  No telephone calls are allowed to arrestees for thirty days, so they are left to hope and wander about their loved ones, their jobs, their rent, their bills and other obligations.  Arrestees like the Plaintiffs and class members are not told when they will be released.  This uncertainty compounds the physical and psychological stress for detainees.  Conditions are spartan at best.  Heat, light, blankets, medical care, access to food, water and restrooms are minimal.  Overcrowding often forces arrestees to sleep on the floor, sometimes in plastic "boats,"

sometimes with nothing.  To hold someone in such circumstances entirely without just reason or cause is a cruel and unusual punishment.  Any detention beyond that strictly permitted by the constitution is cruel and unusual punishment.

144.    Moreover, as the Plaintiffs and those similarly situated have been ordered released, any further detention is by definition cruel and unusual.

145.    The Defendants over detain the Plaintiffs and those similarly situated without due process of law and in violation of both the substantive and procedural rights to Due Process under the 14th Amendment of the United States Constitution.

146.    The disparate impact on Black arrestees who are overrepresented in the class of persons overdetained represents a violation of the rights to equal protection under the law. Similarly situated white people are arrested less and released faster as a sole function of their race.

147.    The disparate impact on arrestees whose charges are dismissed versus those who are still charged, but pay a bond, represents a violation of the rights to equal protection under the law.  Arrestees who bond out but are similarly situated to those whose charges are dropped are released faster as a sole function of their bond.

148.    As a direct and proximate result of the tortious and unconstitutional misconduct of the Defendants, and through no fault of their own, the Plaintiffs and those similarly situated were caused to suffer injury, harm and damages of every legal description.

WHEREFORE, for the reasons stated above, Plaintiffs respectfully requests the following relief for themselves and all those similarly situated:

a)       Certification of such class, classes or subclasses as this Court hereinafter finds appropriate based on a Motion for Certification to be filed;

b)     Appointment of the undersigned as counsel for the class, classes or subclasses certified;

c)     Economic, non-economic, punitive and other monetary relief for the Plaintiff and each class member in excess of $75,000.00;

d)     Injunctive relief precluding unconstitutional and tortious overdetention at Baltimore Central Booking; and

e)     Costs and attorneys' fees.

### COUNT II – PATTERN AND PRACTICE OF UNCONSTITUTIONAL OVERDETENTION UNDER 42 USC § 1983 (*MONELL* CLAIM)

149.    All paragraphs elsewhere in this Complaint are incorporated herein by reference.

150.    Count II is a claim against the government entity defendants for a pattern or practice of unconstitutional overdetention under 42 USC § 1983.  The Plaintiffs, for themselves and all those similarly situated, plead this claim alternatively under the 4th, 8th and 14th (due process and equal protection) Amendments to the United States Constitution.

151.    Overdetention for a constitutionally unreasonable period of time at Central Booking is the rule, not the exception.  Well over 75% of the almost 6,000 arrestees ordered released by a Court annually are overdetained at Central Booking for more than 2 hours in order to complete the 15-minute to 1 hour and forty-five minute discharge process.

152.    Approximately 3,000 people every year are detained in Central Booking more than 12 hours after a judge orders them released.

153.    Approximately 600 people every year are detained in Central Booking more than 24 hours after a judge orders them released.

154.    Approximately 180 people every year are detained in Central Booking more than 36 hours after a judge orders them released.  Some are detained for far longer.

155.     The practice of overdetention at Central Booking is widespread, affecting thousands of victims annually.

156.     The practice of overdetention at Central Booking evidences deliberate indifference to the rights of the arrestees to be freed upon Court order.

157.     In addition to permitting and promoting the widespread overdetention of arrests after they are released by Court order, the governmental entity defendants have failed to properly train, discipline and supervise the State employees operating Central Booking pursuant to *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989).

158.     The State failed and continues to fail to train officers regarding the constitutional requirements for releasing arrestees after a Court order.  The State maintains no standards for such releases and fails to enforce any standards it claims to have.

159.     The State fails to track arrestee releases in a way to determine the type of data disclosed for the first time in this lawsuit.  When asked via pre-suit Public Information Act request, the State responded that it did not track how quickly arrestees are released from Central Booking and could not provide this data.

160.     The State has received numerous complaints from arrestees about over detention after Court discharge, and has been on actual and inquiry notice of the problem for a sufficient period of time to solve it and institute appropriate training.  The State has failed to do so.

161.     The State entity Defendants know, given the conditions at Central Booking and prior complaints, that a failure to train officers about the constitutional standards for releasing arrestees after Court order is causing the violation, and will continue to cause the violation, of the rights of the Plaintiff and those similar situated.  As a result, the governmental entity Defendants'

failure to train reflects deliberate indifference to the constitutional rights of arrestees at Central Booking.

162.    The disparate impact on the Race and Innocent Classes represents a violation of the rights to equal protection under the law. Similarly situated people are arrested less and released faster as a sole function of their race and bond status.

163.    The pattern or practice of overdetention directly and proximality caused constitutional injury to the Plaintiffs and those similarly situated in the form of the loss of freedom. The practices of the government entity Defendants are the moving force of the constitutional violation and there is a clear affirmative link between the policy and the particular constitutional violation alleged.

WHEREFORE, for the reasons stated above, Plaintiffs Jamien Palmer, Deshawn Wilson, Clayton Rogers and Beatrice Elmore respectfully request the following relief for themselves and all those similarly situated:

a)    Certification of such class, classes or subclasses as this Court hereinafter finds appropriate based on a Motion for Certification to be filed;

b)    Appointment of the undersigned as counsel for the class, classes or subclasses certified;

c)    Economic, non-economic, punitive and other monetary relief for the Plaintiffs and each class member in excess of $75,000.00;

d)    Injunctive relief precluding unconstitutional and tortious overdetention at Baltimore Central Booking; and

e)    Costs and attorneys' fees.

## <u>COUNT III – VIOLATION OF MARYLAND DECLARATION OF RIGHTS</u>

164.    All paragraphs elsewhere in this Complaint are incorporated herein by reference.

165.    Count III is a claim against all Defendants under the Maryland Declaration of Rights.  The Plaintiffs, for themselves and all those similarly situated, plead this claim alternatively under Articles 16, 19, 24, 25 and 26 of the Declaration of Rights and the allegations above are incorporated herein by reference.

WHEREFORE, for the reasons stated above, Plaintiffs Jamien Palmer, Deshawn Wilson, Clayton Rogers and Beatrice Elmore respectfully request the following relief for themselves and all those similarly situated:

a)    Certification of such class, classes or subclasses as this Court hereinafter finds appropriate based on a Motion for Certification to be filed;

b)    Appointment of the undersigned as counsel for the class, classes or subclasses certified;

c)    Economic, non-economic, punitive and other monetary relief for the Plaintiffs and each class member in excess of $75,000.00; and

d)    Injunctive relief precluding unconstitutional and tortious overdetention at Baltimore Central Booking.

### <u>COUNT IV – *LONGTIN* PATTERN OR PRACTICE CLAIM FOR VIOLATIONS OF THE MARYLAND DECLARATION OF RIGHTS</u>

166.    All paragraphs elsewhere in this Complaint are incorporated herein by reference.

167.    Count IV is a claim against the governmental entity Defendants for a pattern or practice of violating the Maryland Declaration of Rights.  The Plaintiffs, for themselves and all those similarly situated, plead this claim alternatively under Articles 16, 19, 24, 25 and 26 of the Declaration of Rights and the allegations above are incorporated herein by reference.

28

WHEREFORE, for the reasons stated above, Plaintiffs Jamien Palmer, Deshawn Wilson, Clayton Rogers and Beatrice Elmore respectfully request the following relief for themselves and all those similarly situated:

a)      Certification of such class, classes or subclasses as this Court hereinafter finds appropriate based on a Motion for Certification to be filed;

b)      Appointment of the undersigned as counsel for the class, classes or subclasses certified;

c)      Economic, non-economic, punitive and other monetary relief for the Plaintiffs and each class member in excess of $75,000.00; and

d)      Injunctive relief precluding unconstitutional and tortious overdetention at Baltimore Central Booking.

### COUNT V – COMMON LAW FALSE IMPRISONMENT

168.    All paragraphs elsewhere in this Complaint are incorporated herein by reference.

169.    Count V is a Maryland common law claim against all Defendants for falsely imprisoning the Plaintiffs and those similarly situated.

170.    The confinement of the Plaintiffs and those similarly situated after a Court orders their release is non-consensual on the victim's part.

171.    The confinement of the Plaintiffs and those similarly situated after a Court orders their release is intentional on the part of the perpetrators.

172.    The Plaintiffs and those similarly situated are each aware during their confinement of their imprisonment and there is no lawful or available means of escape known to the victims.

173.    No law enforcement or other privilege permits the overdetentions at issue in this case.

WHEREFORE, for the reasons stated above, Plaintiffs Jamien Palmer, Deshawn Wilson, Clayton Rogers and Beatrice Elmore respectfully request the following relief for themselves and all those similarly situated:

a)    Certification of such class, classes or subclasses as this Court hereinafter finds appropriate based on a Motion for Certification to be filed;

b)    Appointment of the undersigned as counsel for the class, classes or subclasses certified;

c)    Economic, non-economic, punitive and other monetary relief for the Plaintiffs and each class member in excess of $75,000.00; and

d)    Injunctive relief precluding unconstitutional and tortious overdetention at Baltimore Central Booking.

## **JURY DEMAND**

Plaintiff demands a jury trial as to all claims so triable.

Respectfully submitted,

HANSEL LAW, PC

_____/s/_____
Cary J. Hansel (Bar No. 14722)
Kristen M. Mack (Bar No. 30349)
2514 North Charles Street
Baltimore, MD 21218
Tel: (301) 461-1040
Fax: (443) 451-8606
cary@hansellaw.com
kmack@hansellaw.com
*Counsel for Plaintiff*