**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **JAMIEN PALMER, *et al.*,** | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **Civil No. 1:22-0899-CDA** |
| **STATE OF MARYLAND, *et al.*,** | * | |
| **Defendants.** | * | |

* * * * * * *

**MEMORANDUM OPINION**

This case arises from allegations that the State of Maryland (the "State") adheres to a long-standing practice of unconstitutionally holding arrestees at the Baltimore City Booking and Intake Center ("Central Booking") for unreasonable periods of time after a court orders their release. The plaintiffs assert several causes of action under federal and state law. Now pending is Defendants' Partial Motion to Dismiss Counts III and IV, both of which allege violations of the Maryland Declaration of Rights. ECFs 49, 49-1. The parties fully briefed the issues, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART Defendants' Partial Motion to Dismiss. Accordingly, Count III is dismissed to the extent it seeks relief pursuant to Articles 16, 19, 25, and 26 of the Maryland Declaration of Rights. Plaintiffs' claim under Article 24 in Count III remains because Defendants did not seek to dismiss it. The Court DENIES the Partial Motion as to Count IV.

## I. FACTUAL BACKGROUND[1]

On March 14, 2022, Plaintiffs Jamien Palmer, Deshawn Wilson, Clayton Rogers, and Beatrice Elmore (collectively, "Plaintiffs") brought this suit against the State, the Maryland Department of Public Safety and Correctional Services ("DPSCS"), the Maryland Division of Pretrial Detention and Services ("DPDS"), and Frederick T. Abello, the former Warden of Central Booking ("Warden Abello"), (collectively, "Defendants").

The thrust of Plaintiffs' grievance is the State's alleged long-standing practice of unconstitutionally holding arrestees at Central Booking for unreasonable periods of time after a court orders their release. Compl., ECF 45-1, at 2. According to documents produced by the State, pursuant to the Maryland Public Information Act, the entire process of preparing an arrestee for release can be completed in fifteen (15) minutes. *Id.* at 5. Baltimore City Detention Center representatives have testified that such process should not take longer than 1 hour and 45 minutes. *Id.* at 4. However, Plaintiffs contend that "[b]ased on a representative sample of 2019 data, people presumed innocent and ordered released are held, on average, more than 14 hours after their release is ordered." *Id.* at 2. In 2020, the alleged average time between a release order and the release of a detainee exceeded 19 hours. *Id.* at 3. Plaintiffs claim that "all other years from 2019 to present involved an even longer period of overdetention." *Id.* Plaintiffs' allegations demonstrate that many detainees have been released in less than 1 hour, indicating that releases of such length are possible. In contrast, however, Plaintiffs maintain that in 2020 alone, more than 2,000 people were detained longer than 4 hours after a court ordered their respective releases. *Id.* at 4. Plaintiffs

[1] For the purpose of deciding a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and construes such facts, as well as inferences drawn therefrom, in the light most favorable to the non-moving party. *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 268 (4th Cir. 2022).

present examples of "severe" overdetention at Central Booking, including detentions lasting 6, 8, and 216 days, respectively, after court-ordered release. *Id.*

The allegations recite Plaintiffs' own experiences to support their claim that "Black people are disproportionately over detained the longest and have been for at least every year since 2019[.]" *Id.* at 7. First, Mr. Palmer alleges that he was arrested on a warrant and unreasonably detained for almost 22 hours. *Id.* at 8. A court ordered Mr. Palmer's release on March 15, 2019, at 3:33 p.m., but he remained detained until 1:30 p.m. on March 16, 2019—21 hours and 57 minutes after he was to be freed. *Id.* at 11-12. Second, Mr. Wilson alleges that he was detained for almost 18 hours: a court ordered his release on or about November 29, 2021, at 9:00 a.m., yet he was not released until 6:00 a.m. the next day. *Id.* at 13. Third, Mr. Rogers alleges that he was arrested on a false allegation of rape and detained for almost 90 hours after he should have been released. *Id.* at 14-15. A court ordered Mr. Rogers' release on December 20, 2019, at 8:00 a.m., but he was not released until around 4:00 a.m. on December 24, 2019. *Id.* at 15. Last, Ms. Elmore alleges that she was unlawfully detained for almost 12 hours: the court having ordered her release on June 7, 2019 at 8:07 p.m., Ms. Elmore was not released until around 8:00 a.m. the following day—11 hours and 53 minutes later. *Id.* at 16.

According to Plaintiffs, the unreasonable, post-order detention periods at Central Booking cost them time, money, jobs, housing, repossession of their cars, and even custody of their children. *Id.* at 6. Moreover, Plaintiffs argue that such patterns and practices put arrestees' health, physical safety, and life at risk. *Id.* Plaintiffs attribute such risk to the nature of Central Booking: on average, according to Plaintiffs, there are two serious incidents of detainee-on-detainee violence each day, to say nothing of incidents between officers and detainees. *Id.* Plaintiffs also highlight

that arrestees who post bond are "preferentially released" more than twice as fast as those whose charges are dismissed. *Id.* at 6-7.

Based on these allegations, Plaintiffs seek relief pursuant to five causes of action:

- Count I, Unconstitutional Overdetention under 42 U.S.C. § 1983 or, in the alternative, under the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution;
- Count II, Pattern and Practice of Unconstitutional Overdetention under 42 U.S.C. § 1983 or, in the alternative, under the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution;
- Count III, Violation of the Maryland Declaration of Rights or, in the alternative, Articles 16, 19, 24, 25, and 26 of the Maryland Declaration of Rights;
- Count IV, Pattern and Practice of Unconstitutional Conduct under the Maryland Declaration of Rights or, in the alternative, Articles 16, 19, 24, 25, and 26 of the Maryland Declaration of Rights; and
- Count V, Common Law False Imprisonment.

ECF 45-1, at 23-32. Plaintiffs assert class action allegations as well, seeking relief not only on their own behalf but on behalf of all others similarly situated. *See id.* at 17-23. Plaintiffs seek certification of at least four classes, all of which they claim they adequately and fairly represent. *Id.*

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate where the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding on a motion to dismiss, courts "accept all factual allegations as true and draw all

reasonable inferences in favor of the plaintiff." *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170, 177 (4th Cir. 2023) (citing *Singer v. Reali*, 883 F.3d 425, 437 (4th Cir. 2018)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2) (noting that a complaint must contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief"). "The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014). Courts may consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

## III. ANALYSIS

For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART Defendants' Partial Motion to Dismiss. Accordingly, Count III is dismissed to the extent it seeks relief pursuant to Articles 16, 19, 25, and 26 of the Maryland Declaration of Rights. Plaintiffs' claim under Article 24 in Count III remains because Defendants did not seek to dismiss it. The Court DENIES the Partial Motion as to Count IV.

**A.** *Defendants' Partial Motion to Dismiss is* ***<u>Granted</u>*** *as to Plaintiffs' Claims under Articles 16, 19, 25, and 26 in <u>Count III</u>.*

At the outset, Plaintiffs cite a barrage of Maryland state cases to support their contention that Maryland courts do not draw "bright line" distinctions between the Articles of the Maryland Declaration of Rights (the "Articles") and United States Constitution, and that Count III is a single claim that may be framed properly under Articles 16, 19, 24, 25, and 26. ECF 53, at 9-10. The only federal case Plaintiffs cite is *Krell v. Queen Anne's Cnty.*, No. JKB-18-637, 2019 WL 4888634 (D. Md. Oct. 3, 2019), *aff'd in part, vacated in part, remanded sub nom. on other grounds*, *Krell v. Braightmeyer*, 828 F. App'x 155 (4th Cir. 2020). *Krell* stands for the proposition that "in the context of excessive force claims brought under Articles 24 and 26, courts do not strictly observe the distinction between arrestees and pretrial detainees." 2019 WL 4888634, at *9. Although Plaintiffs are correct that Maryland's standard for analyzing claims under excessive force by police officers is the same under Articles 24 and 26, *Smith v. Bortner*, 998 A.2d 369, 375 (Md. 2010) (collecting cases), this comparison is inappropriate in the context of pretrial detainees in non-excessive force cases. To the contrary, *Krell* explained that outside the context of excessive force, "courts have not treated Articles 24 and 26 as interchangeable . . . ." 2019 WL 4888634, at *9. Therefore, the Court will not ignore any apparent distinctions between the Articles cited in support of Count III. For the reasons stated below, the Court GRANTS Defendants' Partial Motion to Dismiss Plaintiffs' claims under Articles 16, 19, 25, and 26 in Count III.

i. *Plaintiffs' Claim under Article 19 is Dismissed.*

First, Defendants move to dismiss Plaintiffs' claim under Article 19 contending that Plaintiffs "have a clear statutory remedy . . . to enforce their due process and equal protection rights" under 42 U.S.C. § 1983 and the other applicable Articles. *Id.* Because Article 19 is a "right of access to the courts . . . when there is no statute or principle that specifically provides a

remedy[,]" Defendants argue that Plaintiffs' assertions fail to state a claim. *Id.* Plaintiffs counter that they have sufficiently stated a claim because Article 19 provides "a constitutional right [] for a plaintiff to have access to redress for an injury caused by a state constitutional violation." ECF 53, at 16. Plaintiffs argue that "Maryland courts have not applied a clear standard regarding which constitutional articles apply in which situations." *Id.*

Article 19 states, in relevant part: "[t]hat every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the land . . . ." Md. Const. art. XIX. It is intended to ensure "access to [the] courts." *Franklin v. Mazda Motor Corp*., 704 F. Supp. 1325, 1327 (D. Md. 1989). As the Supreme Court of Maryland explained, "[i]t is a 'basic tenet, expressed in Article 19 . . ., that a plaintiff injured by [an] unconstitutional state action should have a remedy to redress the wrong.'" *Dua v. Comcast Cable*, 805 A.2d 1061, 1084 (Md. 2002) (quoting *Ashton v. Brown*, 660 A.2d 447, 464-65 (Md. 1995)) (alteration in *Dua*). Article 19 "generally prohibits unreasonable restrictions upon traditional remedies or access to the courts[.]" *Lee v. Cline*, 863 A.2d 297, 309 (Md. 2004) (internal citation omitted). As this District has recognized, Article 19 seeks to protect against "voids in liabilities." *See Talley v. Anne Arundel Cnty., Md.*, No. RDB-21-347, 2021 WL 4244759, at *6 (D. Md. Sept. 17, 2021) (explaining that Article 19 protects against voids in liabilities such as governmental immunity—and dismissing the plaintiff's claim because there was no void in liability). However, "application of traditional or well-established immunities from suit has been held not to violate Article 19." *Jackson v. Dackman Co.*, 30 A.3d 854, 866 (Md. 2011) (holding that the immunity provisions under the Reduction of Lead Risk in Housing Act were invalid under Article 19 because it left the innocent victim uncompensated for their injuries). Recently, Judge Hollander held, in the context of an employment discrimination case, that Article 19 does not allow for a private right of action and,

accordingly, dismissed that portion of the plaintiff's claim. *Doe v. Cmty. Coll. of Balt. Cnty.*, 595 F. Supp. 3d 392, 407-08 (D. Md. 2022).

As Defendants highlight, Plaintiffs neither allege nor demonstrate an inability to access the courts regarding the present grievance. ECF 58, at 5. Plaintiffs claim that Article 19 is set forth as a "constitutional backstop in the event that the court finds [that] they [are] not entitled to relief under any other provision of the state constitution." ECF 53, at 16. However, there is no void in liability here because Plaintiffs bring claims under other laws that allow Plaintiffs to seek redressability of their claims against the Defendants—namely, the other counts not challenged by Defendants' motion. Therefore, because Article 19 does not allow for a private right of action, and Plaintiffs fail to allege that there is a void in liability, Plaintiffs' claim under Article 19 is dismissed.

ii. *Plaintiffs' Claim under Article 26 is Dismissed.*

Defendants challenge Plaintiffs' claim under Article 26, arguing that Plaintiffs fail to claim that they or anyone else "w[ere] unlawfully apprehended or improperly searched by any Defendant." ECF 49-1, at 6-7. Defendants maintain that Article 26 pertains only to warrant requirements regarding search or seizure and is construed *in pari materia* with the Fourth Amendment. *Id.* at 6. According to Defendants, Plaintiffs' defense of this theory "conflate[s] numerous cases alleging excessive force[.]" ECF 58, at 2. Defendants also argue that the Fourth Circuit has rejected the continuance of a seizure in finding that "the Fourth Amendment does not embrace a theory of continuing seizure." *Id.* at 4 (citing *Riley v. Dorton*, 115 F.3d 1159, 1162 (4th Cir. 1997), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010)). Meanwhile, Plaintiffs contend that their continued detention for several hours, after the court ordered their release, violated their due process rights, and constituted an unreasonable seizure. ECF 53, at 13.

Plaintiffs counter that Article 26 reaches more broadly than Defendants claim, arguing that Article 26 "provides due process guarantees that are similar to those provided under Article 24." *Id.* at 11. Thus, according to Plaintiffs, "the protections guaranteed by Articles 24 and 26 . . . apply to this case[,]" and Defendants' motion should be denied. *Id.* at 15.

Defendants have the better argument here. The Fourth Circuit reads Article 26 and the Fourth Amendment as "parallel" to each other. *Robles v. Prince George's Cnty., Md.*, 302 F.3d 262, 269 n.1 (4th Cir. 2002); *see Mazuz v. Maryland*, 442 F.3d 217, 231 (4th Cir. 2006) ("Although, theoretically, the resolution of claims under the Fourth Amendment and Article 26 can differ, . . . we discern no basis in this record or under Maryland law to support a different construction of these provisions."); *Strickland v. Carroll Cnty., Md.*, No. ELH-11-00622, 2012 WL 401075, at *23 (D. Md. Feb. 7, 2012) (collecting Maryland state cases that have construed Article 26 *in pari materia* with the Fourth Amendment). The Fourth Amendment "does not embrace a theory of continuing seizure and does not extend to the alleged mistreatment of arrestees or pretrial detainees in custody." *Riley*, 115 F.3d at 1164. Instead, "the Fourth Amendment [] applies to the 'initial decision to detain an accused,' not to the conditions of confinement after that decision has been made." *Id.* at 1163 (internal citation omitted). As this Court recognized earlier this year, because plaintiffs' claims arise from their status as pretrial detainees, Article 26 does not apply to their situation. *Rodwell v. Wicomico Cnty., Md.*, No. DKC-22-3014, 2024 WL 1178202, at *10 (D. Md. Mar. 19, 2024) (dismissing claims under Article 26 because it, like the Fourth Amendment, does not apply to pretrial detainees). For these reasons, Plaintiffs' claim under Article 26 in Count III is dismissed.

iii. *Plaintiffs' Claims under Articles 16 and 25 are Dismissed.*

Similarly, Defendants maintain that Plaintiffs' pretrial detainee status precludes relief pursuant to Articles 16 and 25: this time, because their pretrial detainee status excludes them from the purview of the Eighth Amendment. ECF 49-1, at 9. Defendants assert that Articles 16 and 25 are read "*in pari materia* with the Eighth Amendment's prohibition against cruel and unusual punishment." *Id.* at 8. Plaintiffs disagree, arguing that "treatment of a detainee is an executive act and may be evaluated under the reasonableness standard of the Fourteenth Amendment." ECF 53, at 15-16. Specifically, Plaintiffs contend that Articles 16 and 25 are not "grounded in the Eighth Amendment[.]" *Id.* at 15.

Defendants are correct that Maryland federal and state courts read Articles 16 and 25 *in pari materia* with the Eighth Amendment. *See Brooks v. State*, 655 A.2d 1311, 1316 n.2 (Md. App. Ct. 1995), *abrogated on other grounds by Winters v. State*, 76 A.3d 986 (Md. 2013), (citing *Harris v. State*, 539 A.2d 637, 642 n.5 (Md. 1988)); *Wallace v. Moyer*, No. CCB-17-3718, 2020 WL 1506343, at *9 (D. Md. Mar. 30, 2020); *Rodwell*, 2024 WL 1178202, at *9.

Federal courts have held, consistently, that the Fourteenth Amendment protects pretrial detainees, while the Eighth Amendment protects convicted persons. *See, e.g.*, *Moyer*, 2020 WL 1506343, at *9 (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 400-01 (2015)) ("The Supreme Court has explained that the Eighth Amendment's prohibition on cruel and unusual punishment applies only to convicted prisoners, and that a pretrial detainee's claims of mistreatment while detained are instead governed by the Fourteenth Amendment's due process clause."); *Brown v. Warden*, No. GJH-17-3231, 2019 WL 1409694, at *4 (D. Md. Mar. 28, 2019) (quoting *Graham v. Conner*, 490 U.S. 386, 395 n.10 (1989)) (noting that "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment[,]" and that "[a]fter

conviction, the Eighth Amendment serves as the primary source of substantive protection ... in cases . . . where the deliberate use of force is challenged as excessive and unjustified"); *Thompson v. Opoku*, No. ELH-18-1022, 2020 WL 978681, at *15 (D. Md. Feb. 28, 2020) (quoting *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001)) ("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.").

Plaintiffs contend that while Articles 16 and 25 tend to be read consistent with the Eighth Amendment, courts need not necessarily do so. They cite to *Dua v. Comcast Cable*, where the Supreme Court of Maryland was asked to interpret Articles 19 and 24 "*precisely the same* as the Takings clause of the Fifth Amendment and the Fourteenth Amendment . . . ." 805 A.2d at 1071 (emphasis added). The court declined to do so, explaining that despite Article 24 and the Fourteenth Amendment being complementary, they are "independent, and [] governmental action may be unconstitutional under the authority of Article 24 alone[,]" in that "decisions applying federal constitutional provisions are no more than persuasive authorities." *Id.* at 1072 (internal citation omitted).

Despite this dicta offering some general support to their view, Plaintiffs fail to identify any federal or state case recognizing a pretrial detainee's ability to obtain relief pursuant to Articles 16 and 25 or the Eighth Amendment. To the contrary, Plaintiffs concede that "no Maryland court has ever applied the cruel and unusual standard to an executive branch action like the misconduct at issue in this case." ECF 53, at 15.

Judges in this District often dismiss claims under Articles 16 and 25 when plaintiffs are pretrial detainees. *See Rodwell*, 2024 WL 1178202, at *10 (dismissing the plaintiff's claims under Articles 16 and 25 for cruel and unusual punishment because, similar to the Eighth Amendment,

they do not apply to pretrial detainees, and the plaintiff was not a convicted prisoner at the time of the incident giving rise to his complaint); *Moyer*, 2020 WL 1506343, at *9 (dismissing claims under Articles 16 and 25 "as these provisions do not apply to pretrial detainees"); *see also Haskins v. Hawk*, No. ELH-11-2000, 2013 WL 1314194, at *26 (D. Md. Mar. 29, 2013) (dismissing a claim under Article 24 because it did not mention "cruel and unusual punishment, but two other provisions . . . expressly prohibit [it]: Article 16 and Article 25. [Thus, the] plaintiff's state constitutional claim [was] more appropriately brought under Article[s 16 and 25]."). Because Plaintiffs are pretrial detainees and not convicted prisoners, Articles 16 and 25 do not apply. Their claims in Count III under Articles 16 and 25 are therefore dismissed.

**B.** *Defendants' Partial Motion to Dismiss is* ***Denied*** *as to Count IV.*

Defendants move to dismiss Count IV, insisting that Plaintiffs' theory seeks relief under "a cause of action that has not been recognized by this Court as permitted against State entities." ECF 49-1, at 10. Defendants also contend that although pattern and practice claims can be brought against local governments under the Maryland Declaration of Rights, that cause of action is unavailable against the State or its agencies. Plaintiffs disagree and maintain that "the Supreme Court of Maryland recognized a cause of action for harms caused by patterns or practices of unconstitutional conduct." ECF 53, at 17. Plaintiffs argue that "there is nothing from the [*Prince George's Cnty. v.*] *Longtin* decision that expressly limits a pattern and practice claim to local governments." *Id.*

For several decades, courts have recognized a right to relief against certain government entities for unconstitutional patterns and practices of its employees. In *Monell v. Dep't of Soc. Servs. of City of New York*, the Supreme Court of the United States held that a municipality could be liable under 42 U.S.C. § 1983 for causing unconstitutional actions of its employees through

poor training or policies. 436 U.S. 658, 690-91 (1978). The *Monell* Court expressly limited its holding to "local government units which are not considered part of the State for Eleventh Amendment purposes." *Id.* at 690 n.54. States, including this one, would follow suit. "Maryland, like the federal government, imposes liability on municipalities for widespread patterns or practices that cause constitutional injuries." *McMahon v. Cnty. Comm'rs*, No. JFM-13-490, 2013 WL 2285378, at *4 n.6 (D. Md. May 21, 2013) (citing *Prince George's Cnty. v. Longtin*, 19 A.3d 859, 886-88 (Md. 2011)). Defendants are correct that "*Longtin* claims are essentially Maryland's version of *Monell* claims." *Rosa v. Bd. of Educ. Charles Cnty., Md.*, No. 11-02873-AW, 2012 WL 3715331, at *9 (D. Md. Aug. 27, 2012).

Although the Court routinely analyzes *Longtin* and *Monell* claims together, they are distinct in that Maryland law has a broader reach and "imposes respondeat superior liability on municipalities for [] State constitutional violations of its employees," while *Monell* claims do not. *Grim v. Balt. Police Dep't*, No. ELH-18-3864, 2019 WL 5865561, at *26 (D. Md. Nov. 8, 2019); *Longtin*, A.3d at 885 ("Maryland requires more of its municipalities [than federal law.]" (citing *DiPino v. Davis*, 729 A.2d 354 (Md. 1999))). "Maryland, unlike the United States, [] imposes respondeat superior liability on local government entities for civil damages resulting from State [c]onstitutional violations committed by their agents and employees within the scope of the employment." *McMahon*, 2013 WL 2285378, at *4 n.6 (internal citation omitted). "However, *Longtin*, like *Monell*, creates liability upon the municipality for unconstitutional actions of its employees, not liability upon the individual employee." *Grim*, 2019 WL 5865561, at *26 (internal citation omitted). For this reason, the Court has found plaintiffs unable to pursue *Longtin* claims against an individual defendant in their individual capacity. *Id.* (dismissing the plaintiff's *Longtin* claim against an individual defendant); *Lee v. Queen Anne's Cnty. Off. of Sheriff*, No. RDB-13-

672, 2014 WL 476233, at *17 (D. Md. Feb. 5, 2014) (dismissing with prejudice the plaintiff's *Longtin* claim lodged against individual defendants); *Devi v. Prince George's Cnty*., No. DKC 16-3790, 2017 WL 3592452, at *4 (D. Md. Aug. 21, 2017) (same).

The issue here, however, is not of the impact on individuals; the parties dispute whether *Longtin* applies in this case against the State and its agencies. Defendants cite multiple decisions from this Court that dismissed *Longtin* claims on sovereign immunity grounds. ECF 49-1, at 11-12 (citing *L.J. v. Balt. Curriculum Project,* 514 F. Supp. 3d 707 (D. Md. 2021)). A more recent decision declined to automatically apply immunity to dismiss *Longtin* claims against the State; as a result, those claims proceeded beyond the motion to dismiss stage. *Doe #1 v. Bd. of Educ. of Somerset Cnty.*, No. RDB-22-1491, 2023 WL 375189, at *8-9 (D. Md. Jan. 24, 2023) (acknowledging that sovereign immunity is a valid reason for dismissal of *Longtin* claims, but the defendant did not argue that immunity applied). To agree with Defendants, the Court must consider the availability, if any, of sovereign immunity in this case. *See generally McCray v. Maryland Dep't of Transp., Maryland Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014) ("[B]ecause of its jurisdictional nature, a court ought to consider the issue of [sovereign] immunity at any time, even *sua sponte*." (citation omitted)).

In general, there are two, independent sources of sovereign immunity available to a state that is a defendant in federal court: the Eleventh Amendment of the United States Constitution and State sovereign immunity recognized at common law. "The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court." *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531, U.S. 356, 363 (2001). State sovereign immunity is a "broader doctrine," *Williams v. Morgan State Univ.*, 850 F. App'x 172, 174 (4th Cir. 2021), that "neither derives from, nor is limited by, the terms of the Eleventh Amendment," *Alden v. Maine*,

527 U.S. 706, 713 (1999). These concepts are "related but not identical." *Stewart v. North Carolina*, 393 F.3d 484, 487 (4th Cir. 2005). Both sources permit exceptions to immunity, as noted below. Pertinent to this case, those exceptions turn on the extent to which the State expressly waives immunity and voluntarily removes a case to federal court.

Eleventh Amendment sovereign immunity does not apply here. Where a state has waived immunity in its own courts, voluntary removal to federal court operates as a waiver of Eleventh Amendment immunity. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 616, 619-20 (2000); *see also Stewart*, 393 F.3d at 490 (affirming that *Lapides* controls where a state waives immunity in the court of original filing).[2] The Maryland Tort Claims Act ("MTCA") waives the State's sovereign immunity for "tort action[s] in a court of this state," which includes both common law and state constitutional torts. Md. Code Ann., State Gov't § 12-105; *Williams*, 850 F. App'x at 174 (acknowledging the MTCA as a source of immunity waiver); *Newell v. Runnels*, 967 A.2d 729, 766 n.28 (Md. 2009) (noting that the "MTCA does not distinguish between constitutional torts and state torts"). The State removed Plaintiffs' case from the Circuit Court for Baltimore City—where it is not immune from suit—to this Court. *See* ECF 1. Therefore, Eleventh Amendment immunity has been waived. *E.g.*, *Lapides*, 535 U.S. at 619-20.

The State fares no better on the question of State sovereign immunity recognized at common law. Unlike with the Eleventh Amendment, removal does not *always* waive State sovereign immunity. *Williams*, 850 F. App'x at 174 (citing *Passaro v. Virginia*, 935 F.3d 243,

[2] *Stewart* distinguished—and thus did not apply—*Lapides* because the state-defendant in *Stewart* was immune in the court of original filing. *Stewart*, 393 F.3d at 488-89 ("The Court in *Lapides* did not resolve the effect, if any, of a state's voluntary decision to remove an action from which it would have been immune in its own courts." (citation omitted)). Where a state-defendant is not immune in its own courts, permitting it to invoke Eleventh Amendment immunity—and thus "*regain* immunity it had abandoned previously"—affords the state-defendant an "unfair tactical advantage." *Id.* at 490 (emphasis in original).

247 (4th Cir. 2019)). "In this circuit, a state's removal of a suit to federal court waives [State] sovereign immunity only if the state has consented to suit in its own courts." *Biggs v. N.C. Dep't of Pub. Safety*, 953 F.3d 236, 241 (4th Cir. 2020). This requires a "clear statement (like in a statute or regulation) to indicate such consent." *Id.* As noted above, the MTCA waives the State's sovereign immunity for state constitutional torts. Md. Code Ann., State Gov't § 12-105; *Williams*, 850 F. App'x at 174; *Runnels*, 967 A.2d at 766 n.28. As this Court has recognized recently in a lawsuit alleging violations of Maryland's Declaration of Rights, "it is firmly established that the State waives its sovereign immunity as to State constitutional and tort law claims through the MTCA." *Jordan v. Davis*, No. ELH-22-1541, 2023 WL 2478862, at *22 (D. Md. Mar. 13, 2023) (citations omitted). Because *Longtin* claims are constitutional, the waiver applies here.

Defendants' reliance on *Baltimore Curriculum Project* for immunity reasons is misplaced. That case was filed originally in this Court, not removed from the State's courts, and dismissed the *Longtin* claim "on common law sovereign immunity grounds." *Balt. Curriculum Project*, 514 F. Supp. 3d at 714; *see also* Complaint, *Balt. Curriculum Project*, 514 F. Supp. 3d 707 (D. Md. 2021) (No. SAG-20-2433), ECF 1. In light of the rule reflected in *Biggs*, common law sovereign immunity cannot apply here. For these reasons, the Court finds sovereign immunity inapplicable.

In reaching this conclusion, I respectfully disagree with the other authorities cited by Defendants as to immunity, despite those cases involving removal from state courts. ECF 49-1, at 10-11 (citing *Reid v. Munyan*, WMN-12-1345, 2012 WL 432908 (D. Md. Sept. 18, 2012); *Rosa v. Bd. of Educ. of Charles Cnty., Md.*, No. 11-2873-AW, 2012 WL 3715331 (D. Md. Aug. 27, 2012)). *Rosa* mentioned Eleventh Amendment immunity (but not State sovereign immunity) in the context of *Monell*—before discussing *Longtin*—and dismissed the state law claim. 2012 WL 3715331, at *9-10. *Reid* found that the *Longtin* allegations failed to state a claim; after that conclusion, the

Court cited *Rosa* in support of its conclusion that *common law sovereign immunity* applied. 2012 WL 432908, at *5. It is not clear, when reading those cases, how *Rosa* stands for a dismissal on common law sovereign immunity grounds. Moreover, unlike in *Jordan*, the analyses in *Reid* and *Rosa* do not reference the potential application of the MTCA and the rules in *Lapides* and *Biggs*. For the reasons stated above, the Court finds that both Eleventh Amendment immunity and State sovereign immunity are waived. Therefore, the Court cannot grant the Partial Motion on sovereign immunity grounds.

Less clear is the issue of whether *Longtin* claims may be asserted against the State or its agencies, rather than a local government or municipality. *Longtin* analyzed the latter but was silent on the former. Defendants cite authority from this Court finding that *Longtin* does not permit such claims. ECF 49-1, at 12 (citing *Gandy v. Howard Cnty. Bd. of Educ.*, No. GLR-20-3436, 2021 WL 3911892, at *12 (D. Md. Sept. 1, 2021) (relying on *Rosa*)).[3] However, in a more recent decision, a *Longtin* claim against a school board—a state instrumentality—survived a motion to dismiss. *Doe #1*, 2023 WL 375189, at *8-9 ("There is no basis (aside, perhaps, from sovereign immunity which the Board has not raised) for concluding that Maryland's blessing of vicarious liability and pattern or practice claims against municipal agencies simultaneously forbids the same claims against state agencies."); *see also Lee-Thomas v. Prince George's Cnty. Pub. Schs.*, 666 F.3d 244, 248 n.5 (4th Cir. 2012) (explaining that schools boards are instrumentalities of the State).

[3] Defendants also cite a case where the Court dismissed a *Longtin* claim because it had been asserted against an individual. ECF 49-1, at 12 (citing *Knox v. Mayor & City Council Balt. City*, No. JKB-17-1384, 2017 WL 5903709, at *9 (D. Md. Nov. 30, 2017)). It does not appear that the parties in that case raised a question of *Longtin*'s applicability to the State.

Defendants do not identify—and the Court has not found—reported authority from state appellate courts on this issue.[4]

When confronted with law that is not entirely clear, the Fourth Circuit directs courts to "rule as it appears the state court would rule." *Talkington v. Atria Reclamelucifers Fabrieken BV*, 152 F.3d 254, 260 (4th Cir. 1998). In doing so, courts "should not create or expand that State's public policy." *Id.* The Court considers "Maryland's longstanding public policy of protecting individual constitutional rights," *Espina v. Jackson*, 112 A.3d 442, 463 (Md. 2015), and thus finds that permitting *Longtin* claims is not an expansion of Maryland's public policy given "the almost uniquely expansive reach of Maryland's constitutional tort remedy," *Longtin*, 988 A.2d at 40. Considering that, the brevity of non-immunity analysis on this issue in federal cases dismissing *Longtin* claims against the State, the absence of state court authority supporting the State's position, and the conflict in this Court's jurisprudence going in Plaintiffs' favor most recently, the Court declines to dismiss the *Longtin* claim as inherently inapplicable to the State or its agencies. For these reasons, the Court DENIES the Partial Motion as to Count IV.

## IV. CONCLUSION

For the reasons stated herein, Defendants' Partial Motion to Dismiss is GRANTED IN PART and DENIED IN PART. The Partial Motion is GRANTED as to Count III to the extent it

[4] An unreported 2022 Maryland appellate court decision addressed the issue and found it proper to submit to the jury a *Longtin* claim against the State. *State v. Wallace*, Nos. 1064, 0642, 2022 WL 2282705, at *9-12 (Md. App. Ct. June 23, 2022) (affirming a jury verdict for the plaintiff under *Longtin* where the plaintiff sued the State and DPSCS, with instructions to apply the MTCA damages cap on remand), *cert. granted*, 285 A.3d 848 (2022), *and case dismissed*, 291 A.3d 775 (2023). The *Wallace* panel found this Court's pre-2022 decisions (e.g., *Rosa*) inconsistent with *Longtin* to the extent they read *Longtin* as necessarily inapplicable to the State or its agencies (for reasons other than Eleventh Amendment immunity). *Id.* at 12. Mindful that the unreported nature precludes viewing *Wallace* as persuasive authority, *see* Md. Rule 1-104, the Court finds the fact of this opinion indicative of, if nothing else, the absence of a clear answer in the State's favor.

seeks relief pursuant to Articles 16, 19, 25, and 26 of the Maryland Declaration of Rights. Plaintiffs' claim under Article 24 in Count III remains because Defendants did not seek to dismiss it. The Partial Motion is DENIED as to Count IV.

Date: September 30, 2024

/S/
Charles D. Austin
United States Magistrate Judge